557 S.E.2d 310

Patricia D. **CHOMA**, Petitioner
below, **Appellant,**

v.

**WEST VIRGINIA DIVISION OF MOTOR
VEHICLES, Respondent below,
Appellee.**

**No. 28890.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 18, 2001.

Decided Nov. 28, 2001.

Concurring Opinion of Justice
Maynard Nov. 30, 2001.

Raymond H. Yackel, Esq., Morgantown, West Virginia, Attorney for Appellant.

Darrell V. McGraw, Jr., Attorney General, Janet E. James, Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellee.

STARCHER, Justice:

In the instant case we reverse a decision of the West Virginia Commissioner of Motor Vehicles suspending a driver's license.

## I.

### Facts & Background

The appellant, Patricia D. Choma, appeals from an order of the Circuit Court of Monongalia County dated May 19, 2000, affirming an administrative decision of the West Virginia State commissioner of motor vehicles ("the Commissioner") dated October 4, 1999. The Commissioner's decision, which adopted the recommended findings of fact and conclusions of law of a hearing examiner, revoked the appellant's driver's license for 6 months for driving under the influence of alcohol, pursuant to the provisions of *W.Va.Code,* 17C–5A–2(i) [2000].

The Commissioner's decision arises from the following facts: the appellant was arrested in Monongalia County, West Virginia on February 28, 1999, and criminally charged with driving under the influence of alcohol ("DUI").[1] Information on the appellant's arrest was forwarded to the Commissioner, who issued an order of license revocation that the appellant contested. That contest led to an administrative hearing before a DMV hearing examiner, held on May 17, 1999. The examiner issued a recommended decision that the Commissioner adopted, overruling the appellant's protest and affirming the license suspension. This decision was upheld by the circuit court, and it is this decision that we review.

## II.

### Standard of Review

■ This Court applies the same standard of review that the circuit court applied to the Commissioner's administrative decision—giving deference to the Commissioner's purely factual determinations; and giving *de novo* review to legal determinations.

## III.

### Discussion

The appellant's challenge to the Commissioner's decision asserts three basic grounds. First, the appellant contends that the Commissioner's decision discredited and disregarded substantial evidence that favored the appellant in an arbitrary, capricious, and unreasonable fashion. Second, the appellant contends that the Commissioner's decision was clearly wrong in view of the totality of the evidence in the record. Third, the appellant contends that the Commissioner's finding that the appellant drove under the influence of alcohol was prohibited because the appellant was acquitted of the criminal charge of DUI.

At the Commissioner's administrative hearing, the state police officer who arrested the appellant[2] testified that he followed the appellant in his cruiser for a distance and observed her cross the center line, that he pulled the appellant over, that the appellant had the odor of an alcoholic beverage on her breath, that she was unable to balance on one leg for 30 seconds, that she was "profane—defiant, argumentative, belligerent" when arrested, and that she made "off-the-wall" comments at the police station where she was taken after being arrested.

The appellant and four of her friends who had been with the appellant at a restaurant just before her arrest testified that the appellant had two alcoholic beverages in the several hours just before her arrest, and that she was not intoxicated when she left their company just before the arrest. The Commissioner's decision summarily discounted these witnesses' testimony as unreliable because of the friendship between the appellant and the witnesses.

The appellant also presented as evidence a 1 hour and 40 minute-long videotape recording that was made of the appellant, apparently by the arresting officers, just after the appellant was arrested and while the appellant was in the police station. The appellant did not know at the time that she was being video-recorded. The videotape shows the ap-

---

1. The appellant was subsequently acquitted of this criminal charge.

2. Two other officers apparently witnessed the arrest; they did not testify at the administrative hearing.

pellant seated and getting up to go to the restroom and to be fingerprinted. She signs papers, answers questions, and blows into an alcohol/breath analyzer machine.[3] The Commissioner's decision says that the appellant appears on the video tape to be distraught, confused, disoriented, interrupting, sarcastic, uncertain, and experiencing mood swings.

The appellant also presented the expert testimony of a forensic scientist with substantial experience in alcoholic testing for state law enforcement agencies. The expert testified that based on her observations of the videotape, the appellant was not intoxicated. The Commissioner's decision summarily discounts the expert's opinion.

We have carefully reviewed the record of the administrative hearing and the evidence that was before the Commissioner. We agree with the appellant's contention that the Commissioner's discussion and evaluation of the record evidence was so selective and one-sided as to rise to the level of arbitrariness and capriciousness.

Illustrative of the Commissioner's approach to the evidence is the Commissioner's evaluation of the videotape recording. The tape in fact portrays a person who is overall rather poised and composed, given the inherent stress of the situation. The Commissioner's characterization of the appellant's behavior as showing clear signs of intoxication is not consistent with what is shown on the tape. Additionally, the appellant's demeanor on the videotape is grossly inconsistent with the level of intoxication in the test results that the officer obtained and forwarded to the Commissioner. In short, the evidence of the videotape fundamentally contradicts the narrative testimony of the arresting officer about the appellant's condition and demeanor at the time of her arrest—testimony that the hearing examiner uncritically credited and relied upon.

■ Evidence such as driving error, consumption of alcohol, and poor performance on a field sobriety test may be suffi-

cient under a preponderance standard to support an administrative finding by the Commissioner of driving while intoxicated. *See* Syllabus Point 1, *Dean v. W.Va. DMV,* 195 W.Va. 70, 464 S.E.2d 589 (1995). But where other evidence strongly weighs against such a finding (in the instant case, such evidence included a videotape that does not show intoxication, expert opinion, witness testimony, and an apparently flawed breath analyzer test), the Commissioner's decision cannot arbitrarily disregard that contradictory evidence. As we stated in Syllabus Point 6 of *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996):

Where there is a direct conflict in the critical evidence upon which an agency proposes to act, the agency may not elect one version of the evidence over the conflicting version unless the conflict is resolved by a reasoned and articulate decision, weighing and explaining the choices made and rendering its decision capable of review by an appellate court.

■ In the instant case, our independent review of the record leads us to agree with the appellant's contention that the Commissioner's decision arbitrarily and capriciously discredited and disregarded the evidence that favored the appellant, and was clearly contrary to the weight of the evidence.

■ In Syllabus Point 2 (in part) of *Muscatell v. Cline,* 196 W.Va. 588, 474 S.E.2d 518 (1996), we stated:

On appeal of an administrative [decision] . . . findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

In the instant case, we conclude that the Commissioner's findings were clearly wrong in light of all of the probative and reliable evidence in the record. We therefore reverse the Commissioner's decision.

The appellant additionally urges this Court to hold that the Commissioner erred in en-

---

3. The breath analyzer results showed Ms. Choma as having a blood alcohol concentration of slightly more than thirty one-hundredths of one percent (.305) by weight, which is more than three times the "legal limit" of ten one-hundredths (.10) (*W.Va.Code,* 17C-5A-2 [2000] ), and is associated with a very high level of intoxication—

close to a stupor. At the administrative hearing, the officer did not offer the breath analyzer results into evidence; in fact, he resisted the applicant's mention of the results. The record does not disclose the reason that the arresting officer chose not to offer the breath analyzer results into evidence at the administrative hearing.

tering a decision suspending the appellant's license, because the appellant was acquitted in her criminal DUI proceeding. The appellant argues that the adjudication of the DUI issue in the criminal context in favor of the appellant is *res judicata* on that issue in the administrative context.

The Commissioner points out in reply that the burdens of proof are different in the two forums—and that this Court has regularly upheld the "two-track" approach of separate administrative driver's license proceedings and criminal DUI proceedings. *See, e.g., Wagoner v. Sidropolis,* 184 W.Va. 40, 43, 399 S.E.2d 183, 186 (1990) (a "clear statutory demarcation [has been recognized] between the administrative issue on a suspension and the criminal issue on a charge of driving while under the influence.")

The Commissioner is correct in pointing out that we have upheld the statutory two-track approach. However, we also must recognize that the separate procedures are connected and intertwined in important ways. For example, criminal arrests for DUI trigger license suspensions, *W.Va.Code,* 17C–5A–1(b)[1994]; and a criminal conviction for DUI is in itself grounds for license suspension. *W.Va.Code,* 17C–5A–1a (1994).

■ The appellant takes the position that even though the burdens of proof are different, exoneration in a criminal DUI proceeding should be *res judicata* and dispositive in favor of the driver in an administrative license suspension proceeding. However, "[i]t is the general rule that a judgment of acquittal in a criminal action is not *res judicata* in a civil proceeding which involves the same facts." Syllabus, *Steele v. State Road Commission,* 116 W.Va. 227, 179 S.E. 810 (1935).

■ The Commissioner takes the position that although he may suspend a license upon proof of a criminal DUI conviction, he may not give any consideration or weight to proof of a criminal DUI acquittal. But if proof of a DUI conviction in a criminal proceeding is not only admissible but dispositive in a license suspension proceeding, then fundamental fairness requires that proof of an acquittal in that same criminal DUI proceeding should

be admissible and have weight in a suspension proceeding. "Aside from all else, due process means fundamental fairness." *Pinkerton v. Farr,* 159 W.Va. 223, 230, 220 S.E.2d 682, 687 (1975).

■ We believe that a fair, constitutionally acceptable approach lies midway between the parties' positions. Therefore we hold that in administrative proceedings under *W.Va.Code,* 17C–5A–1 *et seq.,* the commissioner of motor vehicles must consider and give substantial weight to the results of related criminal proceedings involving the same person who is the subject of the administrative proceeding before the Commissioner, when evidence of such results is presented in the administrative proceeding.[4]

### III.

### *Conclusion*

The decision of the circuit court affirming the Commissioner's decision is reversed; the circuit court on remand should enter an order vacating the Commissioner's administrative decision suspending the appellant's driver's license.

Reversed and Remanded.

MAYNARD, Justice, concurring.

(Filed Nov. 30, 2001)

I completely concur in this case. After viewing the videotape of Ms. Choma wherein she was advised of her rights and administered an intoxilyzer test, it is readily apparent to me that she should never have been charged or arrested in the first place. The intoxilyzer results show a blood alcohol of .305, but, oddly, the videotape clearly and plainly shows a woman in full possession of her faculties; although she is upset, crying and visibly distraught, she certainly appears sober. Her speech is not slurred, her responses to questions and her general conversation are reasoned and appropriate, she is well oriented to time and place, and her physical movements evidence a complete absence of any impairment. She is seen several times rising from a chair, walking away into another room to use the telephone or rest room, walking back and sitting down

---

4. This holding places no affirmative duty on the Commissioner to obtain or adduce information about other proceedings. Our ruling is prospective only.

again. She never staggers, stumbles, hesitates, or falls. All of her movements are quick, positive, and steady. When she repeatedly raises her arm to drink water, she does not tremble and her arm and hand are steady as a rock. A person with a .305 blood alcohol level would have been in a stupor, or at least would have been staggering and unsteady.

The videotape in this case proves the cliché that one picture is worth a thousand words. However, I am compelled to add a few more to the thousands of words already wasted in this case. Ms. Choma was unfairly subjected to an ordeal that was simply dreadful. She was arrested and subjected to a trial, and after her acquittal, the system threw salt in the wound by further imposing penalties in an administrative proceeding. I hope Syllabus Point 3 of the majority opinion will help solve a problem which exists in West Virginia today wherein citizens are subjected to additional punishment even after they have been found innocent of crimes for which they were wrongfully charged.

For the foregoing reasons, I concur with the majority in this case.