619 S.E.2d 261

**Gary E. CARROLL, Petitioner Below, Appellee,**

v.

**F. Douglas STUMP, Commissioner of the West Virginia Division of Motor Vehicles, Respondent Below, Appellant**

**No. 32501.**

Supreme Court of Appeals of West Virginia.

Submitted May 24, 2005.

Decided July 7, 2005.

Dissenting Opinion by Chief Justice Albright July 8, 2005.

Concurring Opinion by Justice Davis July 22, 2005.

Darrell V. McGraw, Jr., Attorney General, Janet E. James, Assistant Attorney General, Charleston, for Appellant.

R. Lee Booten, II, Huntington, for Appellee.

BENJAMIN, Justice.

This case is before the Court upon the appeal of F. Douglas Stump, Commissioner of the Division of Motor Vehicles,[1] ("Commissioner") from the January 14, 2004, Opinion Order of the Circuit Court of Wayne County, West Virginia. The order set aside the Commissioner's administrative revocation of the driver's license of Appellee Gary E. Carroll [Carroll] for a period of six months for driving under the influence of alcohol ("DUI") in violation of W. Va.Code § 17C–5–2 (2000)[2].

---

1. F. Douglas Stump was appointed Commissioner of the West Virginia Division of Motor Vehicles effective January 1, 2005. Commissioner Stump's predecessor, Roger Pritt, in his position as the Commissioner of the West Virginia Division of Motor Vehicles, was initially listed as the Appellant in this matter. Accordingly, F. Douglas Stump has been substituted for Roger Pritt in the style of this matter, as it is the Commissioner of the West Virginia Division of Motor Vehicles, not the individual person holding this position, pursuing the instant appeal.

2. W. Va.Code § 17C–5A–2 (2000) was amended in 2004 to substitute "eight hundredths" for "ten hundredths" throughout in describing the blood alcohol concentration, by weight, which would support a finding that an adult operated a motor vehicle with a blood alcohol concentration in excess of statutory limits. This amendment does not affect the substantive provisions of the statute in effect during the period at issue in this litigation.

For the reasons set forth below, we reverse the Circuit Court of Wayne County's January 14, 2004 order and remand this matter to the Circuit Court of Wayne County for immediate entry of an order reinstating the Commissioner's August 25, 2003 order which revoked Carroll's driver's license.

## I.

### FACTS AND PROCEDURAL BACKGROUND

On November 5, 2001, Officer David S. Hudson of the Huntington Police Department was dispatched to the scene of a two-vehicle accident. While interviewing Carroll, the driver of one of the vehicles involved, Officer Hudson detected the odor of alcohol on his breath and that he had impaired balance, slurred speech, and blood shot eyes. Carroll admitted that he had consumed about three beers prior to the accident. Carroll failed several field sobriety tests administered by Officer Hudson, including the horizontal gaze nystagmus,[3] the walk and turn test,[4] recitation of the ABC's and a preliminary breath test. Thereupon, Officer Hudson placed Carroll under arrest for driving under the influence of alcohol and transported him to the headquarters of the Huntington Police Department. At police headquarters, Officer Hudson read the standard Implied Consent Statement[5] to Carroll, obtained his consent, and administered to him the Intoxilyzer 5000 test. Carroll registered a 0.148 on the Intoxilyzer 5000, which measures the blood alcohol content of the breath.

Upon completion of the Intoxilyzer 5000 and paperwork, Officer Hudson transported Carroll to the Wayne County Magistrate Court.[6] It appears from the record that Officer Hudson, as the arresting officer, failed to sign a criminal complaint against Carroll charging him with a violation of W. Va.Code § 17C–5–2 (2001).[7] Based upon this failure, the magistrate found no probable cause, and, accordingly, did not issue a warrant against Carroll.

Although Officer Hudson failed to sign a criminal complaint against Carroll before the magistrate, he did prepare and file with the Commissioner a written statement relating to Carroll's arrest, referred to as a Statement of Arresting Officer, as required by W. Va. Code § 17C–5A–1(b)(1994).[8] After reviewing the Statement of the Arresting Officer, the Commissioner issued an initial order, dated November 30, 2001, revoking Appellee's privilege to drive in West Virginia for six months. Following an administrative hearing, the Commissioner issued a final order upholding the initial revocation effective August 25, 2003.

Appellee appealed the revocation order to the Circuit Court of Wayne County. On January 14, 2004, the circuit court entered the order at issue herein. The circuit court's order indicates its apparent view that due process requires the arresting officer to swear or affirm, in a criminal complaint before a magistrate, the essential elements of

---

3. Carroll failed this test by pronounced horizontal gaze nystagmus with onset before 45 degrees.

4. Carroll lost his balance several times during the walk and turn test. According to the officer, Carroll could not walk a straight line and could not touch heel-to-toe. Carroll explained that he had some back problems which he said accounted for his inability to stand on one leg.

5. See W.Va.Code § 17C–5A–1(a) (1994) and § 17C–5–4(a) (1979).

6. The arrest was made in the Wayne County portion of Huntington.

7. W. Va.Code § 17C–5–2 (2001) was amended in 2004 to substitute "eight hundredths" for "ten hundredths" throughout in describing the blood alcohol concentration, by weight, which would support a finding that an adult operated a motor vehicle with a blood alcohol concentration in excess of statutory limits, and make certain other changes which do not effect the substantive provisions of the statute in effect during the period at issue in this litigation.

8. W. Va.Code § 17C–5A–1 (1994) was amended in 2004 to substitute "eight hundredths" for "ten hundredths" throughout in describing the blood alcohol concentration, by weight, which would support a finding that an adult operated a motor vehicle with a blood alcohol concentration in excess of statutory limits. This amendment does not effect the substantive provisions of the statute in effect during the period at issue in this litigation.

the DUI offense charged and a finding of probable cause by the magistrate as a jurisdictional prerequisite to an administrative license revocation proceeding.[9] Because the officer had failed to sign a criminal complaint filed before a magistrate, the circuit court found the Commissioner lacked jurisdiction to administratively revoke Appellee's license. Although the circuit court overruled and set aside the Commissioner's revocation of Appellee's driver's license, it found Appellee's November 5, 2001 arrest was lawful and that the arresting officer had probable cause to arrest Appellee for operation of a motor vehicle while under the influence of alcohol.[10] Having considered the Appellant's petition for appeal, the record submitted to this Court, the briefs of the Appellant and Appellee, and the oral argument of counsel, we reverse the circuit court's January 14, 2004 order for the reasons stated below.

circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law de novo." Syl. Pt. 2, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). A question of jurisdiction, such as that presented in the instant matter, is a question of law which we review *de novo.* See, *State ex rel. Orlofske v. City of Wheeling*, 212 W.Va. 538, 542, 575 S.E.2d 148, 152 (2002), quoting, *Snider v. Snider*, 209 W.Va. 771, 777, 551 S.E.2d 693, 699 (2001). Similarly, "where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A. L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). Since there is only a legal question presented, and not a factual one, the sole standard of review to be followed by this Court is *de novo.*

## II.

### STANDARD OF REVIEW

■ In the instant matter, the circuit court reversed the Commissioner's revocation order, finding the Commissioner did not have jurisdiction to enter the same. "In cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the

## III.

### DISCUSSION

■ The issue on appeal is whether the initiation before a magistrate of a criminal prosecution for DUI is a jurisdictional prerequisite to the Commissioner's commencement and completion of the administrative process for the suspension or revocation of a driver's license for DUI pursuant to his au-

9. In its Opinion Order, the circuit court stated:

> [D]ue process requires that the arresting officer complete the criminal charging process before he can proceed to the administrative revocation hearing. To rule otherwise would permit law enforcement officers to make arbitrary, and possibly unlawful arrests and never seek a judicial charge for the underlying criminal offense. I do not believe due process would be satisfied by permitting a law enforcement officer to act unilaterally in triggering the administrative revocation procedure without any judicial involvement in the arrest and charge. A law enforcement officer's reasonable belief that a person is driving while intoxicated is no substitute for the independent judicial determination of probable cause for an arrest.
>
> I find that the administrative revocation procedure is triggered by a lawful arrest, but cannot proceed to resolution without a lawful charge for the underlying specific offense. The police officer in this case could have resubmitted a signed criminal complaint anytime with-

> in one year of the initial arrest to satisfy the due process requirements owed to the Petitioner before this administrative hearing placed his operators license in jeopardy. See W. Va.Code § 61–11–9 (2003). Due process means fundamental fairness.
>
> The Magistrate could find no probable cause upon the merits or could have adjudicated the defendant not guilty on the merits without having any affect on the Commissioner's findings so long as the officer completed his law enforcement charging function. However, the officer's inadvertent failure to charge the Petitioner with the underlying criminal offense within the one-year statute of limitations constitutes a fatal due process error. *Id.*
>
> It is therefore, ordered that the Commissioner had no jurisdiction to conduct an administrative hearing regarding Petitioner's violation of W.Va.Code § 17C–5–2.

10. Appellee has not challenged these findings before this Court. Thus, the lawfulness of Appellee's arrest for driving under the influence of alcohol is not an issue on appeal.

thority under W. Va. Code § 17C–5A–1(1994) and § 17C–5A–2 (2000). The Commissioner argues there is no such jurisdictional prerequisite. Carroll, conversely, maintains a criminal proceeding for driving under the influence must first be initiated by the filing of a sworn complaint, a magistrate's finding of probable cause and issuance of an arrest warrant [11] before the Commissioner has jurisdiction to initiate an administrative proceeding for the revocation of a driver's license, as provided in W. Va. Code § 17C–5A–1 (1994) and § 17C–5A–2 (2000). According to Carroll, the Commissioner may not proceed with an administrative revocation proceeding on the statement of an arresting officer alone.

■ At the outset, we reject the circuit court's due process analysis. In Syllabus Point 3 of *Jordan v. Roberts*, 161 W.Va. 750, 246 S.E.2d 259 (1978), we held that "[t]he administrative proceedings for suspension of a driver's license under W. Va.Code, 17C–5A–1, et seq., do not violate this State's Due Process Clause." Therefore, if a jurisdictional prerequisite exists, as found by the circuit court, the same must be statutory.

Pursuant to W. Va.Code § 17C–5A–1(b)(1994), when a person is arrested for DUI, the arresting officer:

shall report to the commissioner of the division of motor vehicles by written statement within forty-eight hours the name and address of the person so arrested. The report shall include the specific offense with which the person is charged, and, if applicable, a copy of the results of any secondary tests of blood, breathe or urine. The signing of the statement required to be signed by this subsection shall constitute an oath or affirmation by the person signing the statement that the statements contained therein are true and that any copy filed is a true copy. The statement shall contain upon its face a warning to the officer signing that to willfully sign a statement containing false information concerning any matter or thing, material or not material, is false swearing and is a misdemeanor.

See also, *In re Burks*, 206 W.Va. 429, 431, 525 S.E.2d 310, 312 (1999).[12] If the Commissioner determines:

upon examination of the written statement of the officer and [the results of any secondary tests of blood, breath or urine] that a person was arrested for [DUI], and that the results of any secondary test or tests indicate that at the time the test or tests were administered the person had, in his or her blood, an alcohol concentration of ten hundredths of one percent or more, by weight, *or* at the time the person was arrested he or she was under the influence of alcohol, controlled substances or drugs, the commissioner *shall* make and enter an order revoking the person's license to operate a motor vehicle in this state.

W. Va.Code § 17C–5A–1(c) (1994) [13] (emphasis added). The revocation [14] does not become effective until ten days after the person arrested receives a copy of the Commissioner's order. *Id.*

Pursuant to W. Va.Code § 17C–5A–2(a) (2000), the Commissioner must stay any revocation imposed under W. Va.Code § 17C–5A–1 (1994), until such time as the person

---

**11.** Rule 3 of the *Rules of Criminal Procedure for the Magistrate Courts of West Virginia* states: "If from the facts stated in the complaint the magistrate finds probable cause, the complaint becomes the charging instrument initiating a criminal proceeding."

**12.** In *In re Burks*, the Statement of Arresting Officer was not mailed to the Department of Motor Vehicles until December 29, 1997, which was more than forty-eight hours after Burks' arrest for DUI on December 26, 1997. A unanimous Court held, nevertheless, that "a law enforcement officer's failure to strictly comply with the DUI arrest reporting time requirements of W. Va.Code, 17C–5A–1(b) [1994] is not a jurisdictional impediment to the commissioner of the Division of Motor Vehicles taking administrative action based on the arrest report, unless there is actual prejudice to the driver as a result of such failure." Syl. Pt. 1, *In re Burks*. Thus, the Court ruled that "the brief delay in submitting the arresting officer's statement was *de minimis*, and there was no prejudice shown." 206 W.Va. at 432, 525 S.E.2d at 313.

**13.** See note 8, *supra*.

**14.** The period of revocation for a first DUI offense is six months. W. Va.Code § 17C–5A–2(i) (2000).

whose license has been revoked or suspended can be heard where the Commission receives a written request for hearing within thirty calendar days of the person's receipt of the copy of the order of revocation. The hearing is required to be held within one hundred eighty days of the Commissioner's receipt of a request for hearing, unless postponed or continued for good cause shown. W. Va. Code § 17C–5A–2(b) (2000). Pursuant to W. Va.Code § 17C–5A–2(d) (2000):

> The principal question at the hearing shall be whether the person did drive a motor vehicle while under the influence of alcohol, controlled substances or drugs or did drive a motor vehicle while having an alcohol concentration in the person's blood of ten hundredths of one percent or more, by weight . . . . [15]

At the hearing, the Commissioner is required to:

> make specific findings as to: (1) Whether the arresting law-enforcement officer had reasonable grounds to believe the person to have been driving while under the influence of alcohol . . .; (2) whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol . . .; and (3) whether the tests, if any, were administered in accordance with the provision of this article and article five of this chapter.

W. Va.Code § 17C–5A–2(e) (2000). In cases where a person's license has not been previously suspended or revoked for driving under the influence of alcohol, the Commissioner is required to revoke the same for a period of six months if, after the hearing, "the commissioner finds by a preponderance of the evidence that the person did drive a motor vehicle while under the influence of alcohol." W. Va.Code § 17C–5A–2(i) (2000). Should the Commissioner affirm the prior revocation order after a hearing is conducted, the person whose license has been revoked is entitled to review of the Commissioner's decision as set forth in W. Va.Code § 29A–1–1, *et seq.* W. Va.Code § 17C–5A–2(q) (2000). However,

[t]he commissioner may not stay enforcement of the order. The court may grant a stay or supercedeas of the order only upon motion and hearing, and a finding by the court upon the evidence presented that there is a substantial probability that the appellant shall prevail upon the merits, and the appellant will suffer irreparable harm if the order is not stayed: Provided, That in no event shall the stay or supercedeas of the order exceed one hundred fifty days.

W. Va.Code § 17C–5A–2(q) (2000).

As noted above, the report or Statement of Arresting Officer to the Commissioner is required to "include the specific offense with which the person is charged." W. Va.Code § 17C–5A–1(b) (1994). Carroll contends that in order for a person to be "charged" with a "specific offense," the State must institute criminal proceedings before a magistrate, including the filing of a criminal complaint and the finding of probable cause to issue a warrant by the magistrate. Thus, Carroll asks this Court to determine that the word "charged" in W. Va.Code § 17C–5A–1(b) (1994) requires the initiation of a criminal DUI prosecution before a magistrate prior to presentation of the report or Statement of Arresting Officer to the Commissioner.

Carroll cites this Court's decision in *State ex rel. Burdette v. Scott,* 163 W.Va. 705, 259 S.E.2d 626 (1979), as support for the meaning which he ascribes to the word "charged." The question in *Burdette* was whether:

> a defendant charged in a magistrate court by warrant with an offense of which that court has jurisdiction has the right to be tried in that court, or whether the prosecutor may elect to dismiss the warrant, present the case to the grand jury, and proceed to trial in the circuit court. The parties [and the Court] agree[d] that the answer to this question lies in the proper interpretation of W. Va.Code, 50–5–7 (1976).

*Burdette,* 163 W.Va. at 706, 259 S.E.2d at 628. Focusing on that language of W. Va. Code § 50–5–7 (1976),[16] we stated:

---

**15.** *See* note 2, *supra.*

**16.** The relevant statutory language at issue provided, "[e]very defendant charged in a magistrate court in a criminal proceeding which is

The only word that might be considered ambiguous in W. Va.Code, 50–5–7 (1976), is 'charged.' Yet, W. Va.Code, 62–1–1 and –2 (1965), make it clear that a person is 'charged' with a crime once a written complaint has been filed against him and a judicial officer, having found that the complaint contains sufficient facts to establish probable cause that a crime has been committed by the defendant, issues a warrant. When these sections are read together with W. Va.Code, 50–5–7 (1976), as required under W. Va.Code, 50–4–2 (1976), the word 'charged' has no ambiguity.

*Id.* at 709, 259 S.E.2d at 629.[17] In Syllabus Point 2 of *Burdette*, we held "that W. Va. Code, 50–5–7 (1976), requires that if a defendant is charged by warrant in the magistrate court with an offense over which that court has jurisdiction, he is entitled to a trial on the merits in the magistrate court." Additionally, we held, in Syllabus Point 3, that "[e]ven though W. Va.Code, 50–5–7 (1976), gives exclusive jurisdiction to a magistrate court once the defendant is charged by warrant in that court, this does not mean that the circuit court has no initial jurisdiction over misdemeanor offenses. Concurrent jurisdiction still exists." Thus, simply because a magistrate may have jurisdiction over a matter does mean that no other entity has concurrent jurisdiction.

We conclude that the Legislature did not intend the word "charged" in W. Va.Code § 17C–5A–1(b) (1994) to have the meaning urged by Carroll. As used in W. Va.Code § 17C–5A–1(b) (1994), "charged" means the offense for which the law-enforcement officer made the arrest. Examination of W. Va. Code § 17C–19–3 (1951) and § 17C–19–4 (1951) makes amply clear the meaning of "charged", as used in W. Va.Code § 17C–5A–1(b) (1994), by specifically setting forth duties imposed upon the arresting law-enforcement officer following a DUI arrest. Violation of these duties may be punishable as a misdemeanor. W. Va.Code § 17C–5A–

1(b) (1994). W. Va.Code § 17C–19–3(a) (1951) provides, in pertinent part, that

[w]henever any person is arrested for any violation of this chapter punishable as a misdemeanor, the arrested person shall be immediately taken before a magistrate or court within the county in which the *offense charged* is alleged to have been committed and who has jurisdiction of the offense and is nearest or most accessible with reference to the place where the arrest is made, in any of the following cases: ... (3) When the person is arrested upon a *charge* of driving under· the influence of alcohol .... (Emphasis added)

Here, the Legislature has made it perfectly clear that "charged" and "charge" have reference to the offense for which the law-enforcement officer made the arrest. "Charged" plainly could not mean the prior initiation before a magistrate of a criminal prosecution for DUI because when the term is used, the arrested person has not yet appeared before a magistrate. W. Va.Code § 17C–19–4(a) (1951) states that:

[w]henever a person is arrested for any violation of this chapter punishable as a misdemeanor, and such person is not immediately taken before a justice [magistrate] or court as hereinbefore required [W. Va.Code § 17C–19–3], the arresting officer shall prepare written notice to appear in court containing the name and address of such person, the license number of his vehicle, if any, *the offense charged*, and the time and place when and where such person shall appear in court. (Emphasis added)

Again,. the Legislature has used the term "offense charged" before the person arrested has made any appearance before a judicial officer.

If the Legislature had intended for the term "offense ... charged" in W. Va.Code § 17C–5A–1(b) (1994) to mean the initiation before a magistrate of a criminal prosecution

---

within the jurisdiction of the court shall have the right to a trial on the merits in the magistrate court." *Burdette*, 163 at 709, 259 S.E.2d at 629.

**17.** In footnote 4, the Court noted that "[t]he material part of W. Va.Code, 50–4–2 (1976),

states: 'Criminal actions shall be commenced by warrant obtained and executed in compliance with the provisions of article one [§ 62–1–1 et seq.], chapter sixty-two of this Code.'" *Id.* at n. 4.

for DUI, it would be redundant to require the arresting officer to file with the Commissioner a report or Statement of Arresting Officer because the sworn criminal complaint would suffice. Likewise, if the word "charged" in W. Va.Code § 17C–5A–1(b) (1994) meant the initiation before a magistrate of a criminal prosecution for DUI, the Legislature would not have required the Commissioner, in W. Va.Code § 17C–5A–2(e) (2000), to make a specific finding as to "[w]hether the arresting law-enforcement office had reasonable grounds to believe the person to have been driving while under the influence of alcohol." In lieu of a Statement of the Arresting Officer and the Commissioner's finding of probable cause, the Legislature would simply have required the arresting officer to file with the Commissioner the criminal complaint, the finding by the magistrate of probable cause, and a copy of the arrest warrant.

◼ This Court has repeatedly recognized that legislative procedures for the administrative revocation of a driver's license are meant to protect the public from persons who drive under the influence of alcohol.[18] Had the Legislature intended initiation before a magistrate of a criminal prosecution for DUI to be a jurisdictional condition precedent to the administrative revocation of a driver's license for DUI by the Commissioner, it would have said so. Accordingly, we now hold that a person is "charged" with an offense, for the purposes of W. Va.Code § 17C–5A–1 (1994), when he or she is lawfully arrested by a law-enforcement officer having probable cause to suspect the person was driving a motor vehicle under the influence of alcohol, controlled substances or drugs.

◼ This Court has previously recognized that administrative license revocation proceedings and criminal DUI proceedings are two separate and distinct proceedings. In the recent case of *Mullen v. Division of Motor Vehicles*, 216 W.Va. 731, 734, 613 S.E.2d 98, 101 (2005), this Court, through Justice Starcher, observed that we have:

> clearly recognized that the two 'tracks' of criminal and civil drivers' license-related proceedings that arise out of an incident where a person is accused of DUI are separate. But they are also interrelated to the point that due process requires that the results of related criminal proceedings must be given consideration by the DMV in the DMV's administrative process.

Likewise, we noted:

> If the Legislature had wanted to so intertwine the criminal and civil aspects of DUI law as to automatically void related administrative driver's license suspensions when DUI criminal charges are dropped or unproven, the Legislature could have clearly done so—but it did not.

18. *See Jordan v. Roberts*, 161 W.Va. 750, 758, 246 S.E.2d 259, 264 (1978) (noting "[i]n *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977), the Court emphasized 'the important public interest in safety on the roads and highways, and in prompt removal of a safety hazard' in sustaining an Illinois statute authorizing revocation of a driver's license for repeated traffic violations."); *Stalnaker v. Roberts*, 168 W.Va. 593, 599, 287 S.E.2d 166, 169 (1981) (finding "[t]he intent of the West Virginia traffic laws which provide that the commissioner of motor vehicles revoke the licenses of dangerous drivers is protection for the innocent public"); *State ex rel. Ruddlesden v. Roberts*, 175 W.Va. 161, 164, 332 S.E.2d 122, 126 (1985) (recognizing "[t]he drunk driving laws of this State are hardly remedial in nature. The are regulatory and protective, designed to remove violat[or]s from the public highways as quickly as possible."); *Shell v. Bechtold*, 175 W.Va. 792, 796, 338 S.E.2d 393, 396 (1985) (stating "[t]he purpose of the administrative sanction of license revocation is the re-moval of persons who drive under the influence of alcohol and other intoxicants from our highways . . . The revocation provisions are not penal in nature . . . and should be read in accord with the general intent of our traffic laws to protect the innocent public.")(internal citations omitted); *Johnson v. Commissioner*, 178 W.Va. 675, 677, 363 S.E.2d 752, 754 (1987) ("The administrative sanctions of license revocation is intended to protect the public from persons who drive under the influence of alcohol"); and *State ex rel. Hall v. Schlaegel*, 202 W.Va. 93, 97, 502 S.E.2d 190, 194 (1998) ("The purpose of the administrative sanction of license revocation, as we stated in *Shell v. Bechtold*, 175 W.Va. 792, 338 S.E.2d 393 (1985), 'is the removal of persons who drive under the influence of alcohol and other intoxicants from our highways.' *Id.* at 796, 338 S.E.2d at 396. This objective of removing substance-affected drivers from our roads in the interest of promoting safety and saving lives is consistent 'with the general intent of our traffic laws to protect the innocent public' ").

*Id.* Although, the Commissioner is to give consideration to the results of related criminal proceedings, the criminal proceedings are not dispositive of the administrative license revocation proceedings and are not a jurisdictional prerequisite to the administrative proceedings. In *Choma v. West Virginia Division of Motor Vehicles,* 210 W.Va. 256, 260, 557 S.E.2d 310, 314 (2001), we recognized that we had previously

> upheld the statutory two-track approach.... [and] that the separate procedures [administrative and criminal] are connected and intertwined in important ways. For example, criminal arrests for DUI trigger license suspensions, W. Va. Code, 17C–5A–1(b) [1994]; and a criminal conviction for DUI is in itself grounds for license suspension. W. Va.Code, 17C–5A–la (1994).

Similarly, in *Wagoner v. Sidropolis,* 184 W.Va. 40, 43, 399 S.E.2d 183, 186 (1990) (per curiam), we stated:

> the administrative enhancement provisions of W. Va.Code § 17C–5A–2 (1981) are triggered by the statement of an arresting officer rather than the guilty plea of an offender. The guilty plea is only relevant to criminal sanctions which may result. *Administrative actions and criminal sanctions are independent lines of inquiry which must not be confused or integrated.* As we explained in *Shingleton v. City of Romney,* 181 W.Va. 227, 229, 382 S.E.2d 64, 66 (1989), "[t]he administrative sanctions are separate and distinct from the criminal penalties ...." (emphasis added)

Further, we noted that *"[t]he initiation of criminal proceedings is not a necessary predicate to the initiation of administrative sanctions"* under the provisions of W. Va. Code § 17C–5A–1 for driving a motor vehicle while under the influence of alcohol. *Wagoner,* 184 W.Va. at 43, 399 S.E.2d at 186, fn. 3 (emphasis added). In *Wagoner,* this Court also stated that "the statute [W. Va.Code § 17C–5A–2] makes clear that the real issue in revoking a driver's license is whether the individual did in fact operate a motor vehicle while under the influence of alcohol, and no showing of any resulting guilty plea, conviction, or *other criminal proceeding is neces-*

*sary." Id.* at 42, 399 S.E.2d at 185, fn.1 (emphasis added).

If the initiation before a magistrate of a criminal prosecution for DUI is made a jurisdictional prerequisite to an administrative revocation of a driver's license for DUI, the administrative proceedings and the criminal process will not be kept "separate and distinct." Perhaps, more importantly, if this Court were to allow the intrusion of criminal procedures into the administrative proceedings that intrusion would in many instances thwart the legislative objective of the administrative proceedings, namely, protecting the innocent public by promptly removing persons who drive under the influence of alcohol from West Virginia's roads and highways. The administrative proceedings could be delayed or prevented by the failure of the arresting officer to fully and adequately comply with applicable criminal rules of procedure.

A law-enforcement officer arresting a person for DUI has two distinct and separate duties to perform. The first is to file a report or Statement of Arresting Officer with the Commissioner as required by W. Va. Code § 17C–5A–1(b) (1994), initiating an administrative proceeding for the revocation of the arrested person's driver's license. The other is to take the arrested person before a magistrate, present a sworn criminal complaint and initiate a criminal proceeding against the person arrested. Any default by the arresting officer in fulfilling the second of these two duties should not affect the validity of the arresting officer's fulfillment of the first. Since the first and the second set of duties of the arresting officer are separate and distinct and initiate two separate proceedings, one administrative, the other criminal, any default by the arresting officer in fulfilling either of them should not prejudice the other proceeding.

In light of the above, we hold that administrative license revocation proceedings for driving a motor vehicle under the influence of alcohol, controlled substances or drugs which are initiated pursuant to Chapter 17C of the West Virginia Code are proceedings separate and distinct from criminal proceedings arising from driving a motor vehicle under the

influence of alcohol, controlled substances or drugs. The presentation of a sworn complaint before a magistrate and the magistrate's finding of probable cause and issuance of a warrant are not jurisdictional prerequisites to the commencement of administrative license revocation proceedings pursuant to Chapter 17C of the West Virginia Code. Thus, the circuit court erred in finding that the Commissioner did not have jurisdiction to institute administrative license revocation proceedings due to the arresting officer's failure to sign the criminal complaint before the magistrate.

We also quickly dispose of Appellant's remaining constitutional arguments. This Court has "consistently held, [that] license revocation is an administrative sanction rather than a criminal penalty." *State ex rel. Department of Motor Vehicles v. Sanders,* 184 W.Va. 55, 58, 399 S.E.2d 455, 458 (1990) (per curium), *citing, Shingleton v. City of Romney,* 181 W.Va. 227, 229, 382 S.E.2d 64, 66 (1989); *Shell v. Bechtold,* 175 W.Va. 792, 795, 338 S.E.2d 393, 396; *Stalnaker v. Roberts,* 168 W.Va. 593, 597, 287 S.E.2d 166, 168 (1981). Thus, the constitutional provisions applicable to criminal proceedings cited by the Appellee have no relevance to this administrative license revocation proceeding. Even if relevant to the administrative license revocation proceeding, the circuit court specifically found that the arresting officer had probable cause to arrest Carroll for operation of a motor vehicle while under the influence and that the November 5, 2001 arrest was lawful. Having not challenged these basic findings, Carroll's constitutional arguments fail.

## IV.

### CONCLUSION

For the reasons stated above, the January 14, 2004 Order of the Circuit Court of Wayne County, West Virginia, is hereby reversed, and this matter is remanded to that court for the immediate entry of an order reinstating the Commissioner's August 25, 2003 order revoking the Appellee's driver's license.

Reversed and remanded with directions.

ALBRIGHT, Chief Justice, dissenting.

(Filed July 8, 2005)

In its aggressive reach to permit the administrative revocation of an operator's license to operate independently of criminal proceedings for driving under the influence of alcohol, the majority has ignored both statutory prerequisites necessary for the invocation of the administrative revocation proceedings and basic precepts inherent in criminal proceedings in this state. Refusing to recognize the interrelated nature of administrative and criminal sanctions for driving under the influence, the majority wrongly concludes that shoddy police procedures should be overlooked and license revocation permitted even when the statutory conditions for imposing such administrative sanction have not been fully met.

Under West Virginia Code § 17C–5A–1, the triggering event for the initiation of the administrative revocation proceedings is the filing of a written statement by a law-enforcement officer within forty-eight hours of his/her arrest of an individual for driving under the influence in violation of West Virginia Code § 17C–5Å–2 (2004). By statute, that written statement is required to "include the specific offense with which the person is charged and, if applicable, a copy of the results of any secondary tests of blood, breath or urine." W.Va.Code § 17C–5A–1(b). This statement must be signed, as "[t]he signing of the statement . . . shall constitute an oath or affirmation by the person signing the statement that the statements contained therein are true. . . ." *Id.*

In this case, the arresting officer took the Appellee to jail, completed a criminal complaint which he failed to sign, and left the document for the magistrate's review in the morning. Upon the magistrate's perusal of the criminal complaint, the absence of the arresting officer's signature was immediately recognized as a fatal procedural impediment. Consequently, the complaint was not lodged and a warrant was not issued due to the absence of a sworn complaint and, consequently, the failure to demonstrate probable cause. In short, the Appellee was never formally charged by the Wayne County Magistrate with driving under the influence in

violation of West Virginia Code § 17C–5–2. Accordingly, the notice sent by the arresting officer to the DMV which triggered the license revocation proceedings was missing one of the essential statutory predicates for instituting such proceedings. Critically, this fatal defect voided the jurisdiction of the DMV to revoke Appellee's operator's license under West Virginia Code § 17C–5A–1(b).

In its review of the administrative appeal, the circuit court identified various procedural flaws with regard to the revocation of Appellee's operator's license, including the impact of the fact that probable cause had never been found to charge Appellee with driving under the influence. Rather than appreciating the significance of those fundamental procedural flaws, the majority—intent on upholding a revocation at all costs—either downplayed their importance or improperly analyzed the procedures involved.

While citing the seminal case from this Court that properly identifies the meaning of the term "charged" in criminal law parlance, the majority completely overlooked its significance. In *State ex rel. Burdette v. Scott,* 163 W.Va. 705, 259 S.E.2d 626 (1979), this Court elucidated:

> W.Va.Code, 62–1–1 [defining criminal complaint] and –2 [issuance of warrant] (1965), make it clear that a person is "charged" with a crime once a written complaint has been filed against him and a judicial officer, having found that the complaint contains sufficient facts to establish probable cause that a crime has been committed by the defendant, issues a warrant.

163 W.Va. at 709, 259 S.E.2d at 629. Rather than appreciating the importance of the second part of the "charging" process—the approval by the judicial officer of the sufficiency of the grounds to establish probable cause—the majority completely disavows the critical nature of this aspect of the "charging" process and concludes that the term "charged" is synonymous with arrest.

The circuit court fully understand the dangers of permitting a law enforcement officer to institute revocation proceedings without the critical component of independent review by a judicial officer:

> [D]ue process requires that the arresting officer complete the criminal charging process before he can proceed to the administrative revocation hearing. To rule otherwise would permit law enforcement officers to make arbitrary, and possibly unlawful arrests and never seek a judicial charge for the underlying criminal offense. I do not believe that due process would be satisfied by permitting a law enforcement officer to act unilaterally in triggering the administrative revocation procedure without any judicial involvement in the arrest and charge. A law enforcement officer's reasonable belief that a person is driving while intoxicated is no substitute for the independent judicial determination of probable cause for an arrest.

The majority goes seriously astray in its analysis by insisting that the administrative and criminal sanctions for driving under the influence are "separate and distinct." This is an inaccurate statement of the law. Simple perusal of the statute authorizing administrative sanctions for driving under the influence demonstrates the interrelated nature of these two forms of punishment for committing this offense. Only upon an arrest for violation of West Virginia Code § 17C–5–2 that is followed by a timely filing of a written and signed statement by the arresting officer that identifies the offense the individual is *actually* charged with can the administrative revocation proceedings be initiated. To suggest that the two systems work completely independently of each other, as the majority maintains, is simply not true. Rather than being distinct systems with no reliance on each other, the criminal and administrative proceedings for charges of driving under the influence are indisputably intertwined. We recognized the two-track approach inherent to this area of the law (administrative and criminal) in *Choma v. West Virginia Division of Motor Vehicles,* 210 W.Va. 256, 557 S.E.2d 310 (2001), observing "that the separate procedures [administrative and criminal] are connected and intertwined in important ways." *Id.* at 260, 557 S.E.2d at 314. Accordingly, we held in *Choma* that the DMV commissioner "must consider and give substantial weight to the results of related criminal proceedings involving the same person

who is the subject of the administrative proceeding before the commissioner, when evidence of such results is presented in the administrative proceeding." 210 W.Va. at 257, 557 S.E.2d at 311, syl. pt. 3, in part.

In its haste to disconnect the administrative sanctions from the criminal penalties for driving under the influence, the majority fails to understand that the criminal charging process, and all the attendant procedural protections that necessarily accompany that process, are the springboard from which the administrative sanctions are authorized by the Legislature. Without a valid charging process—one that includes review by a judicial officer of the sufficiency of probable cause for the charge—there is no predicate basis for initiating the administrative sanctions authorized by West Virginia Code § 17C–5A–1.

Rather than attempting to salvage one revocation proceeding that was improperly initiated, the majority should have recognized that our legal system would be better served with a forward looking resolution of this matter. Instead of doggedly upholding Appellee's license revocation, the majority should have recognized that the better result for purposes of the long term operation of the license revocation system would have been to hold that an unsigned complaint that results in the lack of a formal charge for an offense falling under West Virginia Code § 17C–5–2 similarly results in the absence of the predicate jurisdictional basis for instituting revocation proceedings. Had the law enforcement officer been notified that the complaint was not lodged due to the lack of his signature, a new complaint could have been prepared and submitted to the magistrate within the one-year-period permitted for such offenses. In this fashion, both the criminal system and the administrative revocation system that is uniquely dependent on the charging of offenses under West Virginia Code § 17C–5–2 would be better served. The alternative, which the majority chose, is to implicitly rubberstamp shoddy police practices and to encourage the institution of administrative charges upon potentially baseless grounds. To assume that the Legislature intended that administrative sanctions be imposed for driving under the influence without the attendant procedural protections that are imposed for instituting criminal charges was certainly imprudent and clearly not in accord with the legislative scheme adopted for the implementation of such sanctions.

Based on the foregoing, I respectfully dissent. I am authorized to state that Justice STARCHER joins me in this dissent.

DAVIS, Justice, concurring.

(Filed July 22, 2005)

I concur completely in the decision reached by the majority opinion in this case. I write separately to elaborate on the majority's interpretation of W. Va.Code § 17C–5A–1 (2004) (Repl.Vol.2004), and to address any misconceptions that may arise from the dissenting opinion regarding the distinctions between an administrative revocation of a driver's license for driving under the influence of alcohol, controlled substances or drugs (hereinafter referred to as "DUI"), and a criminal conviction for DUI.

While I fully agree with the majority's conclusion that, under W. Va.Code § 17C–5A–1(b), the initiation before a magistrate of a criminal prosecution for DUI is not a jurisdictional prerequisite to the Commissioner's commencement and completion of an administrative revocation of a drivers' license for DUI, I believe an examination of the relevant statute through the lens of our rules of statutory interpretation adds further credence to this conclusion.

As plainly demonstrated by the majority and dissenting opinions in this case, the term "charged" in W. Va.Code § 17C–5A–1(b) has created an ambiguity as to the proper application of that code section. "A statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992).[1] Im-

---

1. *See also* Syl. pt. 2, *Crockett v. Andrews*, 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legisla-

portantly, however, "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). Thus, it is this Court's task to identify and give effect to what the Legislature intended the word "charged" to mean.[2] "In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." *Eastern Steel Constructors, Inc. v. City of Salem*, 209 W.Va. 392, 404 n. 11, 549 S.E.2d 266, 278 n. 11 (2001) (quoting *State ex rel. Morgan v. Trent*, 195 W.Va. 257, 263, 465 S.E.2d 257, 263 (1995) (additional quotations omitted)).

With respect to whether the Legislature intended the word "charged" as used in W. Va.Code § 17C–5A–1(b) to require a formal criminal charge, one must look no further than W. Va.Code § 17C–5A–1(c). W. Va. Code § 17C–5A–1(c) states that

> [i]f, upon examination of the written statement of the officer and the tests [sic] results described in subsection (b) of this section, the commissioner shall determine that a person *was arrested* for an offense described in section two [§ 17C–5–2], article five of this chapter . . . and that the results of any secondary test or tests indicate that at the time the test or tests were administered the person had, in his or her blood, an alcohol concentration of eight hundredths of one percent or more, by weight, or at the time the person was arrested he or she was under the influence of alcohol, controlled substances or drugs, *the commissioner shall make and enter an order revoking the person's license to operate a motor vehicle in this state.*

(Emphasis added). Thus, in describing when the commissioner shall order revocation of a driver's license based upon the written statement of the arresting officer, the Legislature

has mandated that the commissioner examine the document to determine that "a person *was arrested.*" W. Va.Code § 17C–5A–1(c) (emphasis added). " 'In the interpretation of statutory provisions the familiar maxim *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another, applies.' Syl. pt. 3, *Manchin v. Dunfee*, 174 W.Va. 532, 327 S.E.2d 710 (1984)." *Shawnee Bank, Inc. v. Paige*, 200 W.Va. 20, 27, 488 S.E.2d 20, 27 (1997). There is nothing in this statute to indicate that the commissioner must confirm that the individual was actually criminally charged with DUI, through a criminal complaint or otherwise, as a prerequisite to revoking a driver's license.

> "[I]t is not for [courts] arbitrarily to read into [a statute] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, *we are obliged not to add to statutes something the Legislature purposely omitted.*" . . . Moreover, "[a] statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten."

*Perito v. County of Brooke*, 215 W.Va. 178, 184, 597 S.E.2d 311, 317 (2004) (additional internal quotations, and citations, omitted). Viewed in this light, it is plain that the Legislature's use of the term "charged" in W. Va.Code § 17C–5A–1(b) was intended only as a descriptive term to identify the particular offense for which the person was arrested.

Moreover, while the majority's opinion deftly distinguishes between the nature of the penalties at issue in the case *sub judice*, *i.e.*, administrative sanctions, versus those which are not at issue in this proceeding as a result of their dismissal below, *i.e.*, criminal sanctions, my dissenting colleagues have failed to make such a distinction, choosing, instead, to blur this critical line. When an

---

tive intent will not be interpreted by the courts but will be given full force and effect.").

**2.** This is where the dissent has erred, by improperly seeking to impose its own view of what the language in question should mean.

"This Court does not sit as a superlegislature . . . It is the duty of the legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this court to enforce legislation unless it runs afoul of the State or Federal Constitutions." *Boyd v. Merritt*, 177 W.Va. 472, 474, 354 S.E.2d 106, 108 (1986).

*State v. Anderson*, 212 W.Va. 761, 765, 575 S.E.2d 371, 375 (2002) (per curiam).

individual is suspected of driving while under the influence of alcohol, controlled substances or drugs, he/she may be penalized administratively, pursuant to W. Va.Code § 17C–5A–1; criminally, in accordance with W. Va.Code § 17B–4–3 (2004) (Repl.Vol.2004); or both administratively and criminally, under both of the aforementioned statutes. Such a distinction is crucial, particularly in a case such as the one at issue in this appeal, because the Legislature has specifically identified, defined, and permitted two separate consequences for these offenses because of their egregious nature and the devastating effects that the commission of these crimes may have on innocent and unsuspecting third parties. In doing so, the Legislature has recognized that one route of punishment is through the criminal justice system, and that such punishment consists of incarceration and the imposition of monetary fines. *See* W. Va.Code § 17B–4–3(b). The alternative or additional consequence is through administrative channels, and consists of the revocation of the offender's driver's license. W. Va.Code § 17C–5A–1(c).

In its deliberation and determination of this case, the majority recognizes such a distinction. The dissenters, however, do not. Instead, my dissenting brethren obfuscate the difference between the procedures and penalties provided for the imposition of administrative versus criminal sanctions for driving under the influence by suggesting that both types of sanctions require the exact same evidentiary standards and procedural requirements. This interpretation of the law is not only incorrect, but is violative of the basic constitutional concept prohibiting the imposition of double jeopardy for the same offense: "No person shall . . . be twice put in jeopardy of life or liberty for the same offence." W. Va. Const. art. III, § 5. *Accord* U.S. Const. amend. V. *See also* Syl. pt. 1, in part, *Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977) ("The Double Jeopardy Clause in Article III, Section 5 of the *West Virginia Constitution,* . . . . prohibits multiple punishments for the same offense."). Insofar as the Legislature has created administrative and criminal penalties for persons driving under the influence, which differ both substantively and procedurally, it is apparent that the Legislature intended to differentiate between the two types of offenses and to create both administrative and criminal sanctions for DUI, not one type of offense that is subject to impermissible double punishments. *See* Syl. pt. 8, *State v. Zaccagnini,* 172 W.Va. 491, 308 S.E.2d 131 (1983) ("Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."). The majority correctly recognizes this distinction; the dissenters do not.

For the foregoing reasons, I respectfully concur with the Opinion of the Court.