653 S.E.2d 649

The **WEST VIRGINIA UNIVERSITY BOARD OF GOVERNORS, the Staff Council of West Virginia University, Terry Nebel, and Charles L. Miller, Jr.,** Plaintiffs Below, Appellants

v.

The **WEST VIRGINIA HIGHER EDU-CATION POLICY COMMISSION,** Defendant Below, Appellee.

No. 33208.

Supreme Court of Appeals of West Virginia.

Submitted April 18, 2007.

Decided May 24, 2007.

ALBRIGHT, Justice:

This is an appeal by the West Virginia University Board of Governors; The Staff Council of West Virginia University; Terry Nebel; and Charles L. Miller, Jr., (hereinafter collectively referenced as "Appellants" or "WVU Board of Governors") from a summary judgment in a declaratory judgment action granted by the Circuit Court of Kanawha County in favor of the West Virginia Higher Education Policy Commission (hereinafter "Commission"). The summary judgment allows the Commission to exercise authority to require all higher education classified employees to be paid at or above the "zero step" for their paygrade on the salary schedule set forth in West Virginia Code § 18B–9–3 (2001) (Repl.Vol.2004). On appeal of the lower court's decision, the Appellants maintain that the lower court erred in finding that the Commission has the authority to compel the West Virginia University Board of Governors to alter its salary policy for classified staff. Subsequent to thorough review of the record, arguments of counsel, applicable precedent, and statutory authority, this Court reverses the determination of the lower court and finds that the WVU Board of Governors has authority to establish a uniform and equitable salary policy for its classified staff that cannot be overridden by the Commission.[1]

## I. Procedural History

The fundamental controversy in this appeal involves the relationship between the Higher Education Policy Commission and the Appellant WVU Board of Governors, the relative responsibilities of the two entities, and the grant of statutory authority to establish salary schedules for classified employees. The Commission contends that the relevant statutory scheme authorizes it to establish a classification system and to require the individual Boards of Governors to maintain certain base salaries for their employees. On the contrary, the Appellants contend that the Commission is exceeding its statutory mandate by attempting to exercise authority over

Robert M. Bastress, Jr., Franklin D. Cleckley, Morgantown, for the Appellants.

Bruce Ray Walker, WV Higher Education Policy Commission, Charleston, for the Appellee.

1. The decision of this Court should in no manner be interpreted to either endorse or disapprove the specific salary policy of West Virginia University upon which this litigation was initiated.

the salary schedules properly adopted by the WVU Board of Governors.

The litigation presently at issue was initiated when the WVU Board of Governors, contrary to the expressed instruction of the Commission, directed its administration to delay implementation of the provisions of the Commission's rule, West Virginia Code of State Regulations § 133–8–12 (hereinafter "C.S.R. § 133–8–12"), to bring all current and new employees to the zero step pay rate by July 1, 2005. An action for declaratory judgment was thereafter brought in the lower court seeking a ruling that the WVU Board of Governors was not required to comply with the Commission's directive to pay all WVU classified employees at or above the zero step for their paygrade. The lower court granted summary judgment to the Commission, and the Appellants now appeal that ruling.

## II. Standard of Review

■ This Court has consistently held that questions of law and questions of statutory interpretation are subject to a *de novo* review. In syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), this Court explained: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a de novo standard of review." *See also Ewing v. Board of Educ. of County of Summers*, 202 W.Va. 228, 503 S.E.2d 541 (1998); *University of West Virginia Bd. of Trustees ex rel. West Virginia University v. Fox*, 197 W.Va. 91, 475 S.E.2d 91 (1996).

■ In syllabus point one of *Appalachian Power Company v. State Tax Department of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995), this Court stated that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to de novo review." In *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995), this Court also clarified that "[a]s a result of this inquiry being strictly a matter of statutory construction, our power of interpretive scrutiny is plenary." 194 W.Va. at 776, 461 S.E.2d at

522. With those standards of review as our foundation, we proceed to a resolution of this matter.

## III. Discussion

The governing authority for the institutions of higher learning in this state has undergone extensive restructuring within the past several decades. The recent history of these alterations, culminating in the creation of the entities serving as an Appellant and the Appellee in the present case, can be summarized briefly. The West Virginia Board of Governors existed as the primary governing authority prior to the 1969 creation of the West Virginia Board of Regents. *See* West Virginia Code § 18–26–1, et seq. (1969). In 1989, the West Virginia Legislature abolished the Board of Regents and divided its powers between the University of West Virginia Board of Trustees, to govern the West Virginia University system, and the Board of Directors of The State College System, to govern the state colleges, community colleges, and other post-secondary education systems. *See generally, University of West Virginia Bd. of Trustees ex rel. West Virginia University v. Graf*, 205 W.Va. 118, 516 S.E.2d 741 (1998); *City of Morgantown v. Ducker*, 153 W.Va. 121, 168 S.E.2d 298 (1969).

In 2000, the West Virginia Legislature abolished the University of West Virginia Board of Trustees and the Board of Directors of The State College System.[2] *See generally, Trimble v. West Virginia Bd. of Directors*, 209 W.Va. 420, 549 S.E.2d 294 (2001). The Legislature replaced those two entities with (1) an Institutional Board of Governors for each higher education institution, an example of which is the Appellant WVU Board of Governors; and (2) the West Virginia Higher Education Commission, the Appellee in the present case. *See* W.Va. Code § 18B–1B–1, et seq (2000). The authority of each of those entities, to the degree relevant to this matter, is discussed separately below.

**2.** *See* West Virginia Code §§ 18–2–1(e) and (f) (2000).

A. Higher Education Policy Commission

The West Virginia Legislature created the Higher Education Policy Commission through West Virginia Code § 18B–1B–1 (2004), providing as follows:

There is hereby created the "higher education policy commission", hereinafter referred to as the "commission". It is the intent of the Legislature that the commission be responsible to develop, gain consensus around and oversee the public policy agenda for higher education and other statewide issues pursuant to section one-a [§ 18B–1–1a], article one of this chapter under the following conditions:

(a) It is the responsibility of the commission to work collaboratively with the council to develop and gain consensus around the public policy agenda for community and technical colleges;

(b) It is the responsibility of the council to oversee the implementation of the public policy agenda for the institutions under its jurisdiction.

(c) All matters of governance not specifically assigned to the commission or council by law are the duty and responsibility of the governing boards.

West Virginia Code § 18B–1B–4 (2005) (Supp.2006) designates the powers and duties of the Commission, providing, in relevant part, as follows:

(a) The primary responsibility of the Commission is to develop, establish and implement policy that will achieve the goals and objectives found in section one-a [§ 18B–1–1a], article one of this chapter. The Commission shall exercise its authority and carry out its responsibilities in a manner that is consistent and not in conflict with the powers and duties assigned by law to the West Virginia Council for community and technical college education and the powers and duties assigned to the governing boards of Marshall University and West Virginia University, respectively. To that end, the Commission has the following powers and duties relating to the institutions under its jurisdiction:

(1) Develop, oversee and advance the public policy agenda pursuant to section one [§ 18B–1A–1], article one-a of this chapter to address major challenges facing the state, including, but not limited to, the goals and objectives found in section one-a [§ 18B–1–1a], article one of this chapter and including specifically those goals and objectives pertaining to the compacts created pursuant to section two [§ 18B–1A–2], article one-a of this chapter and to develop and implement the master plan described in section nine [§ 18B–1B–9] of this article for the purpose of accomplishing the mandates of this section;

. . .

(33) Pursuant to the provisions of article three-a [§§ 29A–3A–1 et seq.], chapter twenty-nine-a of this code and section six [§ 18B–1–6], article one of this chapter, promulgate rules as necessary or expedient to fulfill the purposes of this chapter. The Commission and the Council shall promulgate a uniform joint legislative rule for the purpose of standardizing, as much as possible, the administration of personnel matters among the institutions of higher education[.]

The Legislature authorizes the Commission to establish a personnel classification system in West Virginia Code § 18B–9–1 (2004) and defines such system as follows in West Virginia Code § 18B–9–2(g) (2004): "the process of job categorization adopted by the commission and council jointly by which job title, job description, pay grade and placement on the salary schedule are determined[.]"

West Virginia Code § 18B–9–4(a) (2001) (Repl.Vol.2004) imparts further guidance regarding an equitable system of job classification, providing that the Commission:

shall implement an equitable system of job classifications, with the advice and assistance of staff councils and other groups representing classified employees, each classification to consist of related job titles and corresponding job descriptions for each position within a classification, together with the designation of an appropriate pay grade for each job title, which system shall be the same for corresponding positions of the commission and in institutions under all governing boards. The equitable system of job classification and the rules

establishing it which were in effect immediately prior to the effective date of this section are hereby transferred to the jurisdiction and authority of the commission and shall remain in effect unless modified or rescinded by the commission.

West Virginia Code § 18B–9–4(b) (2001) (Repl.Vol.2004) develops some of the parameters for salary schedules, providing as follows:

(b) Any classified staff salary increases distributed within state institutions of higher education on the first day of July, two thousand one, shall be in accordance with the uniform employee classification system and a salary policy adopted by the interim governing board and approved by the commission. Any classified salary increases distributed within a state institution of higher education after the first day of July, two thousand one, shall be in accordance with the uniform classification system *and a uniform and equitable salary policy adopted by each individual board of governors.* Each salary policy shall detail the salary goals of the institution and the process whereby the institution will achieve or progress toward achievement of placing each classified employee at his or her minimum salary on the schedule established pursuant to section three [§ 18B–9–3] of this article.

W.Va.Code, § 18B–9–4(b) (emphasis provided).

## B. Board of Governors

Pursuant to West Virginia Code § 18B–2A–4(a) (2005) (Supp.2006),[3] the Board of Governors of each individual institution is granted the authority to "[d]etermine, control, supervise and manage the financial, business and education policies and affairs of the state institutions of higher education under its jurisdiction[.]" West Virginia Code § 18B–2A–4(j) continues by granting the Boards the following authority:

(j) Subject to the provisions of federal law and pursuant to the provisions of article nine [§§ 18B–9–1 et seq.] of this chapter and to rules adopted by the Commission and the Council, administer a system for the management of personnel matters, including, but not limited to, personnel classification, *compensation* and discipline for employees at the institutions under their jurisdiction[.]

West Virginia Code § 18B–2A–4(j) (emphasis provided). As quoted above, the Legislature envisioned a system through which, pursuant to West Virginia Code § 18B–9–4(b), classified salary increases distributed after July 1, 2001, would be "in accordance with the uniform classification system and a uniform and equitable salary policy adopted by each individual board of governors." The Legislature also specified m West Virginia Code § 18B–9–4(b) that such salary policies adopted by the individual Boards of Governors "shall detail the salary goals of the institution and the process whereby the institution will achieve or progress toward achievement of placing each classified employee at his or her minimum salary on the schedule established pursuant to section three [§ 18B–9–3] of this article."

## C. Resolution of Issue of Authority in this Matter

The Appellants contend that West Virginia Code § 18B–9–4(b), as quoted above, provides clear authority to the WVU Board of Governors to set salaries,[4] while permitting the Commission to retain the authority to establish a classification system for such employees under West Virginia Code § 18B–9–1. It is the fundamental distinction between

---

**3.** West Virginia Code § 18B–2A–4 was amended slightly in 2007, but those amendments did not affect the provisions relied upon in this opinion.

**4.** Pursuant to West Virginia Code § 18B–9–4(b), the WVU Board of Governors adopted a Salary Improvement Plan in 2001, establishing a gradual implementation of the salary schedule specified in West Virginia Code § 18B–9–3, to begin in 2003 and to continue over the ensuing five-year period, contingent upon adequate appropriations. Since the adoption of that plan, the Legislature has not made specific appropriations for funding classified staff salaries at the levels established by § 18B–9–3. In implementing this Salary Improvement Plan, the WVU Board of Governors was cognizant of the requirements of West Virginia Code § 18B–9–4(b) with regard to compliance with *both* the Commission's uniform classification system *and* the Board's own uniform and equitable salary policy.

establishment of classification and establishment of salary schedules that provides the foundation for the disposition of this case.

The Appellants maintain that the Commission lacks the authority to compel compliance with West Virginia C.S.R. § 133–8–12, alleging (1) that such rule was not validly promulgated; and (2) that it exceeded the scope of the Commission's statutorily-derived authority. We examine each of those assertions below.

### 1. West Virginia C.S.R. § 133–8–12

Prior to the creation of the Commission as an entity, West Virginia C.S.R. § 128–62–12,[5] required that entry rates for classified staff must be set at or above minimum salaries corresponding to the salary schedule of West Virginia Code § 18B–9–3. With the advent of the new statutory scheme, the policies and rules in effect on the July 1, 2001, date of the Commission's establishment were to be transferred to the Commission and were to "continue in effect until rescinded, revised, altered or amended or transferred to the governing boards...." W.Va.Code § 18B–1–3(h)(2001).[6] Pursuant to West Virginia Code § 18B–1–6(d) (2001),[7] the previously enacted C.S.R. § 128–62–12 legislative rule was reclassified as a procedural rule.

On July 1, 2001, the amended version of West Virginia Code § 18B–9–4(b) took effect, providing that salary increases would be in accord with the uniform classification system and a uniform and equitable salary policy *adopted by the individual Boards of Governors*. Several months later, in October 2001, the Commission amended the prior C.S.R. § 128–62–12, and it was redesignated as procedural rule C.S.R. § 133–8–12. It provided that the entry rate (zero step) salary must not be below an established minimum. C.S.R. § 133–8–12.1 provides as follows:

> The entry rate for any classified employee appointed after the effective date of this rule shall not be below the established minimum set out below for the pay grade assigned. The entry rate for any classified employee appointed on or after July 1, 2005, shall not be below the entry (zero) step set out in W.Va.Code 18B–9–3 for the pay grade assigned.

The rule alteration, however, was accomplished without compliance with the Higher Education Rule Making Act amendment process. *See* W.Va.Code § 29A–3A–1, et seq. (2001).[8] The Appellants therefore contend that the rule is unenforceable and that in its

---

**5.** West Virginia C.S.R. § 128–62–12.1 stated: "The entry rate of a classified position is the published minimum rate of pay associated with each pay grade. No covered employee shall be appointed below the established minimum of the pay grade to which the position is assigned."

**6.** The Commission was authorized to "transfer any rule, other than a legislative rule, to the jurisdiction of the governing boards...." W.Va. Code § 18B–1–3(i) (2001).

**7.** West Virginia Code § 18B–1–6(d) (2001) provided as follows:

(d) On or after the effective date of this section and before the first day of October, two thousand one, notwithstanding any other provision of this code to the contrary, any rule heretofore promulgated as a legislative rule which was not required specifically by law to be promulgated as a legislative rule, or any rule previously required to be a legislative rule by statute but reclassified by subsection (c) of this section, may be reclassified by the commission either as an interpretive rule or as a procedural rule. The commission shall notify in writing the legislative oversight commission on education accountability of such reclassification and shall file such notice with the office

of the secretary of state to be published in the state register.

The 2001 act also contained exceptions to the transfer of rules which are not applicable to this case. *See* W.Va.Code 18B–1–6(c) (2001).

**8.** West Virginia Code § 18B–1–6 (2001) authorized the Commission to amend rules, but the Commission was required to do so in "accordance with the provisions of [West Virginia Code § 29A–3A–1 et seq.]." This Court's research has revealed no provision excusing the Commission from adhering to the requirements of the Higher Education Rule Making Act when amending any previously existing rule. In fact, the 2001 reorganization act provided as follows: "Nothing in this section may be construed to require that any rule reclassified under this section be promulgated again under the procedures set out in article three-a, chapter twenty-nine-a *unless the rule is amended or modified*." West Virginia Code § 18B–1–6(e) (2001) (emphasis supplied). Furthermore, West Virginia Code § 29A–3A–2 (1998) provides that promulgation shall occur "only in accordance with this article and shall be and remain effective only to the extent that it has been or is promulgated in accordance with this article."

absence, the previous version of the rule, C.S.R. § 128–62–12, remains in effect.[9]

■■■ We agree with the Appellants' contention that the Commission failed in its attempt to amend C.S.R. § 128–62–12 to create procedural rule C.S.R. § 133–8–12. Rules and regulations promulgated or amended by the Higher Education Policy Commission without compliance with the Higher Education Rule Making Act, West Virginia Code § 29A–3A–1, et seq., are void. In this case, the prior rule, C.S.R. § 128–62–12, was to be transferred and remain in effect only until it was amended. When it was amended by the Commission to create C.S.R. § 133–8–12, the Commission did not comply with the Higher Education Rule Making Act amendment process. Thus, C.S.R. § 133–8–12 was not properly promulgated and is unenforceable.[10]

2. Statutory Authority of the Commission:

### West Virginia Code § 18B–9–4(b) and § 18B–2A–4(j)

■■■ Even if the Commission's enactment of C.S.R. § 133–8–12 had satisfied the promulgation standards of the Higher Education Rule Making Act amendment process, this Court finds that it would have been invalid based upon the absence of statutory authority to compel the Commission's desired result. West Virginia Code § 18B–9–4(b) bestows upon the Boards of Governors the authority to establish a uniform and equitable salary policy for its institution's classified staff. The Commission maintains that the scope of West Virginia Code § 18B–9–4(b) is neces-

sarily limited by West Virginia Code § 18B–2A–4(j), to the extent that the latter statute authorizes the individual Boards of Governors to "administer a system for the management of personnel matters" but specifies that such administration shall be *"[s]ubject to* the provisions of federal law and pursuant to the provisions of article nine of this chapter *and to rules adopted by the Commission* and the Council[.]" W.Va.Code § 18B–2A–4(j) (emphasis supplied). Based upon the inconsistency that is ostensibly created, we examine the development and impact of those statutes in an attempt to harmonize them.

Prior to the 2001 alterations to the legislative scheme, West Virginia Code § 18B–9–4(b) (1993) had provided authority to the Boards of Governors for formulation of *both* personnel classification policies and salary policies.[11] In the 2001 revisions, those functions were divided, with the Commission to establish a personnel classification system and the Boards of Governors to establish a salary schedule. The Legislature also rewrote West Virginia Code § 18B–2A–4(j) in 2001, adding the language quoted above which specified that the Boards of Governors' *administration* of a system for the management of personnel matters would be subject to Article 9, federal law, and rules of the Commission.

More significantly, with reference to the Commission's contention that West Virginia Code § 18B–2A–4(j) requires the Boards of Governors to adhere to the Commission's rule in this matter, we observe that West

---

**9.** The Appellants assert that West Virginia University has been in compliance with C.S.R. § 128–62–12 since its inception. That rule appended a published minimum rate of pay for each pay grade, and WVU avers that it remains in compliance with that particular rate schedule.

**10.** The Appellants also emphasize that C.S.R. § 133–8–12 is not procedural in nature and should not have been classified as a procedural rule. Pursuant to definitions of procedural and legislative rules set forth in West Virginia Code § 29A–1–2(g) and 29A–1–2(d) (1982) (Repl.Vol. 2002), the C.S.R. § 133–8–12 rule fits the definition of a legislative rule having "the force of law ....," supplying the "basis for the imposition of civil ... liability," and granting or denying "a specific benefit" W.Va.Code § 29A–1–2(d). Because we premise our conclusion upon

the absence of compliance with the applicable amendment procedures, we do not address the Appellants' argument regarding the distinctions between legislative and procedural rules.

**11.** West Virginia Code § 18B–9–4(b) had previously provided as follows:

    (b) Beginning with the fiscal year commencing on the first day of July, one thousand nine hundred ninety-four, classified staff salary increases distributed within each state institution of higher education shall be in accordance *with a uniform employee classification system and salary policy which is adopted by the respective governing boards* and approved in accordance with the provisions of article three-a [§ 29A–3A–1 et seq.], chapter twenty-nine-a of this code.

W.Va.Code 18B–9–4(b) (emphasis supplied).

Virginia Code § 18B–2A–4(j) states only that the Boards' act of *administering* a "system for the management of personnel matters, including, but not limited to, personnel classification, compensation and discipline for employees at the institutions under their jurisdiction" *is subject* to Article 9, federal law, and the Commission's rules.

This Court has invariably explained that "courts may not find ambiguity in statutory language which laymen are readily able to comprehend Plain language should be afforded its plain meaning." *Crockett v. Andrews*, 153 W.Va. 714, 718–19, 172 S.E.2d 384, 387 (1970). This Court held as follows in syllabus point two of *Crockett*, "Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." In syllabus point four of *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959), this Court also expressed: "Generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use."

In its common usage, "administer" means to "manage," which in turn means to "handle, direct, govern, or control in action or use." Random House Webster's Unabridged Dictionary 26, 1166 (2d. ed. 1998). Manage is also described as a lesser included term of administer. *See Wyoming v. United States*, 279 F.3d 1214, 1228 n. 11 (10th Cir.2002). Courts have also uniformly held that "the plain meaning of 'administer' means 'to manage[.]'" *Wallace v. Am. Petrofina, Inc.*, 659 F.Supp. 829, 831 (E.D.Tex.1987) (citations omitted); *see also Bostic v. Ohio River Co. (Ohio Div.) Basic Pension Plan*, 517 F.Supp. 627, 632 (S.D.W.Va.1981). Black's Law Dictionary identifies "administer" as the verb form of "administration," which it defines as follows: "1. The management or performance of the executive duties of a government, institution, or business. 2. In public law, the practical management and direction of the executive department and its agencies." Black's Law Dictionary 44 (7th Ed. 1999).

West Virginia Code § 18B–2A–4(j) provides that the Board of Governor's administration of the system for the management

of personnel affairs is subject to the Higher Education Policy Commission's rules. Affording the word "administer" its common meaning, the statute thus includes acts of procedural control, direction, and discharge of duties encompassed within the management of personnel matters. It does not appear that the Board of Governors' actual establishment of a uniform and equitable salary policy is affected by the Commission's power to make rules to administer such plans pursuant to West Virginia Code § 18B–2A–4(j). This Court's conclusion is consistent with established rules of statutory construction in three distinct manners.

### a. Precedence of Specific Statute Over General Statute

As this Court has consistently held, "[t]he general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syl. Pt. 1, *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984). *See also Tillis v. Wright*, 217 W.Va. 722, 728, 619 S.E.2d 235, 241 (2005) ("specific statutory language generally takes precedence over more general statutory provisions."); *Bowers v. Wurzburg*, 205 W.Va. 450, 462, 519 S.E.2d 148, 160 (1999) ("Typically, when two statutes govern a particular scenario, one being specific and one being general, the specific provision prevails."). Thus, the specific authority granted by West Virginia Code § 18B–9–4(b) regarding the Board of Governor's right to establish a uniform and equitable salary policy takes precedence over the general grant of authority to the Commission to establish rules impacting the Boards' administration of a system for managing personnel matters.

### b. Context Within Statutory Scheme

This Court's conclusion is also premised upon our examination of the individual statutes within the context of the entire statutory structure. This Court has consistently reiterated the following guidance:

"'"A statute should be so read and applied as to make it accord with the spirit,

purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if it terms are consistent therewith." Syllabus Point 5, *State v. Snyder,* 64 W.Va. 659, 63 S.E. 385 (1908).' Syl. Pt. 1, *State ex rel. Simpkins v. Harvey,* [172] W.Va. [312], 305 S.E.2d 268 (1983)." Syl. Pt. 3, *Shell v. Bechtold,* 175 W.Va. 792, 338 S.E.2d 393 (1985) [(per curiam)].

Syl. Pt. 1, *State v. White,* 188 W.Va. 534, 425 S.E.2d 210 (1992). "Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syl. Pt. 3, *Smith v. State Workmen's Compen. Commr.,* 159 W.Va. 108, 219 S.E.2d 361 (1975); *see also* Syl. Pt. 5, in part, *Fruehauf Corp. v. Huntington Moving & Storage Co.,* 159 W.Va. 14, 217 S.E.2d 907 (1975) ("Statutes which relate to the same persons or things, or to the same class of persons or things, or statutes which have a common purpose will be regarded in pari materia to assure recognition and implementation of the legislative intent.").

c. Statutory Treatment of West Virginia University and Marshall University Boards of Governors

The conclusion of this Court with regard to the WVU Board of Governors is also consistent with the statutory scheme of recognizing the primacy of the WVU and Marshall University Boards of Governors. West Virginia Code § 18B–2A–3(a) (2005) (Supp.2006), specifically provides as follows:

(a) The governing boards are subject to the supervision of the Commission or the

Council, as appropriate, *except for the governing boards of Marshall University and West Virginia University as it relates to the state institutions of higher education know [sic] as Marshall University and West Virginia University.* The Chancellor for Higher Education and the Chancellor for Community and Technical College Education, under the supervision of their respective boards, are responsible for the coordination of policies and purposes of the governing boards and shall provide for and facilitate sufficient interaction among the governing boards and between the governing boards and the State Board of Education to meet the goals and objectives provided in the compacts and in section one-a [§ 18B–1–1a], article one of this chapter.

W.Va.Code § 18B–2A–3(a) (emphasis supplied). This differentiated treatment [12] of WVU and Marshall University Boards of Governors is also prominent in various other statutory pronouncements. In West Virginia Code § 18B–1B–4(a)(12) (2005) (Supp.2006), for instance, the Legislature grants the Commission the authority to "[m]aintain guidelines for institutions to follow concerning extensive capital project management except the governing boards" of Marshall University and WVU, which are not subject to such provisions.

In West Virginia Code § 18B–1B–4(a)(35) (2005) (Supp.2006), the Legislature addresses transfers of credit and explains that implementation of such plans must be accomplished *in consultation with* the WVU and Marshall Governing Boards, as follows:

(35) In consultation with the Governing Boards of Marshall University and West Virginia University, implement a policy jointly with the Council whereby course credit earned at a community and technical college transfers for program credit at any other state institution of higher education

---

**12.** In addressing collaboration of state institutions of higher education having teacher preparation programs, the Legislature has declared in West Virginia Code § 18-2-24(4) (2005) (Supp. 2006) that "[t]he state's research and doctoral degree-granting public institutions of higher education, West Virginia University and Marshall University, have the most capacity to be impor-

tant sources of research and expertise on professional development[.]" West Virginia Code § 18-2-24(5) (2005) (Supp.2006) continues: "West Virginia University and Marshall University are the only institutions in the state that offer course work leading to a doctoral degree in education administration[.]"

and is not limited to fulfilling a general education requirement[.]

In West Virginia Code § 18B–1B–4(a)(36) (2005) (Supp.2006), the Legislature grants the Commission the right to "[p]romulgate a joint rule with the Council establishing tuition and fee policy for all institutions of higher education, other than state institutions of higher education known as Marshall University and West Virginia University which are subject to the provisions of [West Virginia Code § 18B–10–1]." [13] In West Virginia Code § 18B–1B–4(b)(4) (2005) (Supp. 2006), the Legislature specifies that "[t]he Commission's authority to review and approve academic programs for either the state institution of higher education known as Marshall University or West Virginia University is limited to programs that are proposed to be offered at a new location not presently served by that institution[.]" West Virginia Code § 18B–4–7 (2005) (Supp.2006) addresses accreditation issues and provides, in pertinent part, as follows:

> The Commission shall make rules for the accreditation of colleges and universities in this state, except the governing boards of Marshall University and West Virginia University shall make rules for the state institutions of higher education known as Marshall University and West Virginia University, and shall determine the minimum standards for conferring degrees.

W.Va.Code § 18B–4–7.[14] Based upon the foregoing examples, it is apparent that the legislative scheme as it relates to this matter is replete with instances in which a heightened level of independence has been statutorily granted to the WVU and Marshall University Boards of Governors.

### IV. Conclusion

Upon this Court's ultimate review of the entire statutory scheme at issue in this case, we conclude that the Legislature intended to draw a clear distinction between the authority granted to the Higher Education Policy Commission and the Boards of Governors of the individual institutions. While establishment of a classification system is firmly within the realm of the Commission's power, authority over salaries is not implicitly contained within that grant of authority to the Commission.[15] The authority granted to the Higher Education Policy Commission by West Virginia Code §§ 18B–9–1 and 18B–9–4(a) to establish and maintain a personnel classification system does not encompass the right to set and control compensation and salary requirements for classified staff employed by West Virginia University.[16]

Based upon the foregoing, we reverse the summary judgment granted by the lower court to the Commission and hold that the Board of Governors may adhere to its salary policy and is not required to comply with the Commission's attempt to control salaries as found in West Virginia C.S.R. § 133–8–12.

Reversed and Remanded.

---

13. West Virginia Code § 18B–10–1(*l*) provides: "Tuition and fee increases of the governing boards, except for the governing boards of the state institutions of higher education known as Marshall University and West Virginia University, are subject to rules adopted by the commission and council jointly...."

14. *See generally* West Virginia Code § 18B–5–4 (2005) (Supp.2006) regarding WVU and Marshall University's preferential rights in the purchase or acquisition of materials, supplies, equipment, services and printing. Marshall and WVU are also authorized to provide for independent performance audits of all purchasing functions and duties on their campuses. W.Va.Code § 18B–5–4(r)(1).

15. The act of classification involves a professional judgment concerning the skill, effort, and responsibility accorded to a particular job, without regard to the individual occupying that job. Classification is thus distinguished from compensation decisions which evaluate not only an individual's classification but also other equitable factors such as relative years of service, availability of funds, and competing demands for limited resources.

16. In light of West Virginia Code § 18B–2A–3(a), expressly reserving the power of the Higher Education Policy Commission to supervise institutions of higher education other than West Virginia University and Marshall University, we express no opinion regarding the Commission's right to control salary issues at such other institutions.