338 S.E.2d 393

**Bernard SHELL III**

v.

**Lee BECHTOLD, Commissioner, State of West Virginia Department of Motor Vehicles.**

No. 16629.

Supreme Court of Appeals of West Virginia.

Dec. 18, 1985.

---

Leo Catsonis, Michael T. Clifford, Charleston, for appellant.

Wyatt Hanna, Asst. Atty. Gen., Charleston, for appellee.

PER CURIAM:

In this appeal, we are asked to decide whether a municipal court conviction for driving a motor vehicle while under the influence of alcohol may be used to enhance the administrative sanction of driver's license revocation.

The appellant, Bernard Shell III, a West Virginia resident and holder of a West Virginia driver's license, was twice convicted of driving a motor vehicle while under the influence of alcohol. As a consequence of each conviction, the appellant's driver's license was revoked. These convictions and revocations were not appealed.

The first conviction occurred in November, 1977, when the appellant pleaded guilty in the Municipal Court of Huntington, West Virginia, to a charge of driving while intoxicated, a violation of Huntington municipal ordinance 22–89. An abstract of judgment was transmitted to the Department of Motor Vehicles (DMV), pursuant to *Code,* 17B–3–4 [1951].[1]

---

1. *Code,* 17B–3–4 [1951] provides in pertinent part:

Whenever a conviction is had ... in the police court or mayor's court of any incorpo-

rated municipality, ... for the violation of any provision of a charter, or by law, or ordinance of such incorporated municipality governing or regulating the operation of mo-

In May, 1982, the appellant was convicted, in the County Court of Palnech County, Florida, of driving while under the influence of intoxicants, a violation of Florida state law. In June, 1982, the State of Florida Department of Highway Safety and Motor Vehicles notified the West Virginia DMV that the appellant had been convicted and that his driving privilege had been revoked for a period of six months, pursuant to Florida Statute 322.28.

The commissioner of the West Virginia DMV then revoked the appellant's driver's license for a period of ten years. The appellant made a timely request for a hearing, and in September, 1982, the appellant appeared, *pro se*, before a hearing examiner. The records of prior convictions were made part of the administrative record. The appellant admitted his Florida conviction, but testified that he was institutionalized outside the State of Florida at the time judgment was entered against him.

Following the hearing, the commissioner issued a final order revoking the appellant's driver's license for ten years, in accordance with *Code*, 17B–3–3 [1951].[2] The appellant appealed the commissioner's order in the Circuit Court of Kanawha County. The case was submitted on briefs, and the circuit court affirmed.

As a preliminary issue, the appellant contends that neither DUI[3] conviction is a proper basis for revocation because neither one is valid. He asserts that the Florida conviction was the product of an involuntary guilty plea and that he did not have counsel at the time of his guilty plea in municipal court.

In the syllabus of *Stalnaker v. Roberts*, 168 W.Va. 593, 287 S.E.2d 166 (1981), we held:

The proper forum for attacking the constitutional validity of a prior traffic offense conviction when that offense is the foundation for adverse administrative action by the commissioner of motor vehicles is the county in which such a conviction was initially rendered if the conviction is a West Virginia conviction, or the state courts of the state in which the conviction was initially rendered if it is an out-of-state conviction. To the extent that *State ex rel. Vance v. Arthur*, 142 W.Va. 737, 98 S.E.2d 418 (1957) and *State ex rel. Lemley v. Roberts*, [164] W.Va. [457], 260 S.E.2d 850 (1979) are to the contrary, they are overruled.

The appellant's collateral challenge of his DUI convictions will therefore not be addressed.

The appellant next contends that former *Code*, 17C–5A–2(c)(4) [1981][4] did not autho-

tor vehicles, except regulations governing standing or parking, the clerk of every such court, ... or the clerk or recorder of such municipality, as the case may be, shall in each case transmit to the department within seventy-two hours after such conviction is had a certified abstract of the judgment on such conviction.

Whenever any person is convicted of any offense for which a provision of this chapter makes mandatory the revocation or suspension of the operator's or chauffeur's license of such person by the department, the court in which such conviction is had shall require the surrender to it of all operator's and chauffeur's licenses then held by the person so convicted and the clerk of every said court, or the justice, or the clerk or the recorder of a municipality, as the case may be, shall thereupon forward the same to the department with the abstract of the judgment on such conviction....

2. *Code*, 17B–3–3 provides:
The department is authorized to suspend or revoke the license of any resident of this State

or the privilege of a nonresident to drive a motor vehicle in this State upon receiving notice of the conviction of such person in another state of an offense therein which, if committed in this State, would be a ground for the suspension or revocation of the license of an operator or chauffeur.

3. We will refer to driving a motor vehicle while under the influence of alcohol, driving while intoxicated, and other similar offenses with the acronym "DUI."

4. In citing former statutes we shall bracket the year of enactment. E.g., former *Code*, 17C–5A–2 [1981] refers to the statute in effect from September 1, 1981, until August 31, 1983. Former *Code*, 17C–5–2 [1976] refers to the statute in effect from June 1, 1976, until August 31, 1981. We do not address the impact of any of the 1983 amendments to Chapters 17B and 17C. *Code*, 17C–5A–2(c)(4) [1981], in effect at the time of the appellant's Florida conviction, provided in pertinent part:
If the commissioner finds by a preponderance of the evidence that the person did drive

rize the commissioner to use either the Florida conviction or the Huntington conviction, even if valid, to revoke his West Virginia driver's license for ten years. Proper determination of the commissioner's authority necessitates interpretation of several statutes, provisions of which are no longer in effect because of amendments.

■ A DUI conviction in another state is ground for license revocation. *Code,* 17B–3–3; *Wells v. Roberts,* 167 W.Va. 580, 582, 280 S.E.2d 266, 268 (1981). Therefore, the commissioner had the authority to revoke the appellant's license upon receipt of the conviction record from Florida. Although *Code,* 17B–3–3 does not specify the length of such revocation period, *Code,* 17C–5A–2 specifies the period of revocation as ten years.

Former *Code,* 17C–5A–2 [1981] (administrative hearings and revocation), must be read *in pari materia* with *Code,* 17B–3–3 (suspension and revocation based on record of out-of-state DUI conviction) and 17B–1A–1 (Driver License Compact). As a member of the interstate Driver License Compact and by virtue of Article IV, *Code,* 17B–1A–1, the DMV is required to treat out-of-state convictions in the same manner as it would in-state convictions.

" 'Statutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments.' Syllabus Point 3, *Smith v. State Workmen's Compensation Commissioner,* [159] W.Va. [108], 219 S.E.2d 361 (1975)." Syllabus Point 1, *Newton v. Dailey,* 167 W.Va. 347, 280 S.E.2d 91 (1981).

Syl. pt. 3, *ACF Industries v. Credit Thrift of America,* 173 W.Va. 83, 312 S.E.2d 746 (1983).

Although *Code,* 17C–5A–2(c)(4) mandates a ten-year revocation for a second DUI offense, the appellant contends the revocation period is limited to a maximum of one year by virtue of *Code,* 17B–3–8 [1981], which reads: "The department shall not *suspend* a driver's license or privilege to drive a motor vehicle on the public highways for a period of more than one year, except as provided in chapter seventeen-c of this code." (emphasis added). It is clear, that *Code,* 17B–3–8 applies, by its express language, to suspensions, not revocations,[5] such as this case, and chapter 17C proceedings are specifically excepted from the one-year suspension limitation. We, therefore, are of the opinion that a ten-year revocation period applies to the case now before us.

The main issue in this proceeding is whether, the commissioner had authority to revoke the driver's license of a West Virginia resident for ten years, under 17C–5A–2(c)(4) [1981], where the first offense was the violation of a municipal ordinance.

In *State v. Vandall,* 170 W.Va. 374, 294 S.E.2d 177 (1982), we held that the provi-

---

a motor vehicle while under the influence of alcohol, or under the influence of any controlled substance, or under the influence of any other drug to a degree which renders him incapable of safely driving, ... alcoholic concentration in his blood of ten hundredths of one percent (.10), or more, by weight, ... the commissioner shall revoke the person's license for a period of six months: *Provided,* That if the commissioner has previously suspended the person's license under the provisions of this section, the period of revocation shall be ten years ...

We believe that the word "suspended" in the above-quoted excerpt from *Code,* 17C–5A–2 was mistakenly substituted for "revoked." Under 17C–5A–2 [1981], the commissioner was only granted the authority to revoke a driver's license. The legislature corrected this error in the 1983 amendment of 17C–5A–2.

5. *Code,* 17B–1–1 [1963] contains the following definitions:

(m) *Suspension.*—Suspension means that the driver's license and privilege to drive a motor vehicle on the public highways are temporarily withdrawn but only during the period of such suspension;

(n) *Revocation.*—Revocation means that the driver's license and privilege to drive a motor vehicle on the public highways are terminated and shall not be renewed or restored, except that an application for a new license may be presented and acted upon by the department after the expiration of at least one year after the date of revocation, except as otherwise provided in section two, [§ 17C–5–2], article five, chapter seventeen-C of this Code;

For a discussion of the distinction between "suspension" and "revocation," see *Wells v. Rob-*

sion, in former *Code*, 17C–5–2(d) [1976],[6] of an enhanced criminal penalty may not be invoked where the prior offense was a conviction under a municipal DUI ordinance. However, we noted a distinction between the judicial imposition of criminal penalties and the administrative revocation or suspension of a driver's license. 170 W.Va. at 375, 376, 294 S.E.2d at 179; *see also Stalnaker v. Roberts, supra* 168 W.Va. at 599, 600, 287 S.E.2d at 169.

◼ The purpose of the administrative sanction of license revocation is the removal of persons who drive under the influence of alcohol and other intoxicants from our highways. *Id.* The revocation provisions are not penal in nature, *People v. Finley*, 21 Ill.App.3d 335, 340, 315 N.E.2d 229, 232 (1979); *Bell v. Dept. of Motor Vehicles*, 6 Wash.App. 736, 739, 496 P.2d 545, 547 (1972); *Bolio v. Malloy*, 126 Vt. 424, 427, 234 A.2d 336, 339 (1967) and should be read in accord with the general intent of our traffic laws to protect the innocent public.

"A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith."

*erts, supra,* 167 W.Va. at 583, 584, 280 S.E.2d at 269.

6. Former *Code*, 17C–5–2 [1976] provided in pertinent part:
 (a) It is unlawful and punishable as provided in subsections (c), (d) and (e) of this section for any person to drive any vehicle in this state while:
 (1) He is under the influence of alcohol;
 (c) A person violating any provisions of subsection (a) or (b) of this section shall, for the first offense, be guilty of a misdemeanor, and, upon conviction thereof, shall be imprisoned in the county jail for a period of not less than twenty-four hours nor more than six months and, in addition to such mandatory jail sentence, such person may be fined not less than fifty nor more than one hundred

Syllabus Point 5, *State v. Snyder*, 64 W.Va. 659, 63 S.E. 385 (1908).

Syl. pt. 1, *State ex rel. Simpkins v. Harvey*, 172 W.Va. 312, 305 S.E.2d 268 (1983).

The legislature intended to apply the administrative sanction of license revocation, under former *Code*, 17C–5–2 [1976] and 17C–5A–2 [1981], where there is a conviction[7] of a DUI offense under a municipal ordinance. The requirement of Code, 17B–3–4 [1951], that a municipality transmit to the DMV an abstract of judgment of any conviction which would result in mandatory license revocation clearly effectuates this intention.

In the case now before us, the clerk of the Huntington Municipal Court sent an abstract of judgment to the DMV indicating that the appellant pleaded guilty to a charge of driving while intoxicated and that he did not appeal. Consequently, his driver's license was revoked for six months, by order signed by R.R. Bolen, Director, Driver Control Division. The revocation was not appealed. The reason for the revocation was clearly stated: "Driving while intoxicated, first offense, November 21, 1977, Municipal Court, Huntington, West Virginia." Under the law in force and effect at the time of this first offense and revocation, former *Code*, 17C–5–2 [1976], the revocation was valid.

◼ The appellant committed his second DUI offense on January 7, 1982, in the State of Florida. He was convicted on May 19, 1982, and his privilege to drive in Florida was revoked for six months. There was no appeal. On receipt of a notice of the conviction, his driver's license was revoked for ten years, by order dated July

dollars; and, in every case of such conviction, such convicted person's operator's or chauffeur's license shall be revoked for a period of six months. The court which convicted such person shall require him to surrender his operator's or chauffeur's license to it and the court shall cause such license and a certified abstract of the judgment on such conviction to be sent to the department as provided in section four, article three, chapter seventeen-b of this code.

7. Under *Code*, 17C–5A–2 [1981], a DUI conviction is not a necessary predicate for license revocation. The conviction is, however, the equivalent of a finding that "the person did drive a motor vehicle under the influence of alcohol ... to a degree which renders him incapable of safely driving."

28, 1982 and signed by R.R. Bolen. Under *Code*, 17B–3–3 [1951], the revocation was valid. The ten-year period of revocation is valid because the Florida conviction is a second offense within the meaning of *Code*, 17C–5A–2(c)(4) [1981]. By virtue of 17C–5A–2(d) [1981],[8] the record of the Huntington conviction was the equivalent of the findings required by 17C–5A–2(c)(4) [1981], since the prior offense was committed on November 21, 1977, thus within five years immediately preceding September 1, 1981.

Accordingly, the order of the Circuit Court of Kanawha County affirming the commissioner's revocation order is affirmed.

Affirmed.

---

**8.** Former *Code*, 17C–5A–2(d) [1981] provides:

> (d) For the purpose of this section, a conviction for an offense under subsection (1) or (b) of the prior enactment of section two, article five of this chapter, which offense was committed within five years immediately preceding the effective date [September 1, 1981] of said section two, article five, shall be considered the same as a prior finding of the commissioner under this section.

*See* Acts 1981, ch. 159.

Citing no authority, the appellant contends that 17C–5A–2(d) [1981] has a retroactive effect that violates the *ex post facto* clauses, Art. III, § 4 of the *W.Va. Const.*, and Art. I, § 10 of the *U.S. Const.* The appellant fails to show that the statute has any detrimental retroactive impact. A second DUI conviction was the basis for a ten-year revocation long before appellant's first con-

viction. This issue was not raised or ruled upon below. We recognize, however, that the United States Supreme Court has held the *ex post facto* clause applicable in criminal, not civil proceedings, *Calder v. Bull*, 3 U.S. 386 (3 Dall.), 1 L.Ed. 648 (1798); *Galvan v. Press*, 347 U.S. 522, 531 at n. 4, 74 S.Ct. 737, 743, 98 L.Ed. 911, 922 (1954); *but see Marcello v. Bonds*, 349 U.S. 302, 319–21, 75 S.Ct. 757, 766–8, 99 L.Ed. 1107, 1121–2 (1955) (Justice Douglas dissenting), and other courts have specifically found the *ex post facto* clause not applicable in administrative proceedings to revoke a driver's license. *Huffman v. Com.*, 210 Va. 530, 172 S.E.2d 788 (1970); *Zaragoza v. Director of Internal Revenue*, 702 P.2d 274 (Colo. 1985).