FILED
February 24, 2022
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 20-0746 – *Frazier, DMV Comm'r v. Slye*

Armstead, Justice, dissenting:

License revocation laws are intended to protect the public. This Court has observed that "[t]he purpose of the administrative sanction of license revocation is the removal of persons who drive under the influence of alcohol and other intoxicants from our highways." *Shell v. Bechtold*, 175 W. Va. 792, 796, 338 S.E.2d 393, 396 (1985) (citation omitted). It is undisputed that the driver, Respondent Joseph Slye, 1) operated a motor vehicle after heavily drinking alcohol; 2) was informed of the consequences of refusing to submit to a secondary chemical test; and 3) refused to submit to the secondary chemical test. Under these facts, I believe the OAH and circuit court erred by reversing the DMV's revocation of Respondent's driver's license for refusing to submit to the secondary chemical test. Therefore, I dissent from the majority opinion's ruling affirming the circuit court.

Respondent was passed out behind the wheel of his truck in the middle of a road. The engine was running and his truck was blocking the roadway. When the arresting officer, Deputy Frick, arrived at the scene, Respondent was confused, drowsy, slurred his speech, and had a strong odor of alcohol on his breath. Respondent admitted that he had been heavily drinking alcohol the previous night. He refused to perform field sobriety tests or to take a preliminary breath test. He was arrested and taken to the sheriff's office.

After arriving at the sheriff's office, Deputy Frick attempted to administer the designated secondary chemical test but Respondent refused. Deputy Frick completed

1

the DUI Information Sheet which included a notation that Respondent had refused to submit to the secondary chemical test. Deputy Frick checked the box on the DUI Information Sheet that provides: "IMPLIED CONSENT READ **AND PROVIDED TO THE SUBJECT**[.]" (Emphasis added.)

During his testimony at the OAH hearing, Deputy Frick described his attempt to administer the secondary chemical test to Respondent:

> I read him the Implied Consent. You know, I explained the – I just read the Implied Consent to him and then I observed him for 20 minutes. **And then he refused to sign the Implied Consent.** I then waited, you know, the additional 15 minutes, and then asked Mr. Slye if he would perform . . . a Secondary Chemical Test of his breath in which he refused again.

(Emphasis added.) On cross-examination, Respondent's counsel asked Deputy Frick: "Did you actually give him a copy [of the implied consent]?" He replied: "I did not, sir." There were no additional questions on this issue.

The majority opinion concludes that because Deputy Frick did not "actually give [Respondent] a copy" of the implied consent statement, Respondent was not properly advised of the consequences for refusing the secondary chemical test. I disagree with this conclusion.

West Virginia Code § 17C-5-7[1] provides direction on the warnings that must be afforded to a driver regarding his or her refusal to submit to a secondary test:

---

[1] The 2013 version of this statute applies to the instant case. While the statute has since been amended, the current version retains the requirement of providing both the oral and written warnings to the driver.

2

(a) If any person under arrest as specified in section four of this article refuses to submit to any secondary chemical test, the tests shall not be given: *Provided, That prior to the refusal, the person is given an oral warning and a written statement advising him or her that his or her refusal to submit to the secondary test finally designated will result in the revocation of his or her license to operate a motor vehicle in this state for a period of at least forty-five days and up to life; and that after fifteen minutes following the warnings the refusal is considered final.* The arresting officer after that period of time expires has no further duty to provide the person with an opportunity to take the secondary test. . . .

W. Va. Code § 17C-5-7(a), in part (Emphasis added.)

Under this code section, it is clear that prior to the refusal, a driver must be given an oral warning and a written statement advising him or her of the consequences of refusing to submit to the test. According to the DUI Information Sheet, the written warning was "READ **AND PROVIDED**" to Respondent. (Emphasis added.) Deputy Frick testified that Respondent refused to sign the written warning. Based on Deputy Frick's testimony before the OAH and the information contained in the DUI Information Sheet, there was sufficient evidence to support the conclusion that the written warning was provided to Respondent and that he refused to sign it.

The only basis for concluding that the forgoing facts violated West Virginia Code § 17C-5-7 was a single question Respondent's counsel asked Deputy Frick during cross-examination: "And did you actually give him a copy?" He replied, "I did not, sir." This testimony does not address the central issue in this matter—was Respondent provided with the written warning and given an opportunity to examine it prior to refusing the secondary chemical test. Instead, this single question only addresses whether Respondent

3

was given a "copy" of the written warning. The plain language of West Virginia Code § 17C-5-7 does not require that a driver be given a "copy" of the written warning.

Unfortunately, neither Respondent's counsel, nor counsel for the State, asked Deputy Frick a follow-up question that would have clarified this issue: was a written warning placed in front of Respondent/provided to him prior to his refusal? That is the only issue in controversy. While this question was not asked, this issue should have been resolved in the DMV's favor for two reasons. First, Deputy Frick testified that Respondent refused to sign the written warning. Because Respondent was given the opportunity to sign the written warning and refused, it is reasonable to conclude that the written warning was "provided" to him. This conclusion is confirmed by the DUI Information Sheet that was completed by Deputy Frick a short time after the arrest and refusal occurred. According to the DUI Information Sheet, the written warning was "READ AND PROVIDED" to Respondent.

The majority opinion correctly notes that a DUI Information Sheet is admissible evidence that may be relied on in an administrative hearing. *See* Syl. Pt. 3, *Crouch v. W. Va. Div. of Motor Vehicles*, 219 W.Va. 70, 631 S.E.2d 628 (2006). The majority further observes that

> [a]lthough the contents of a West Virginia DUI Information Sheet are admissible in an administrative hearing, any evidence contained therein is still subject to rebuttal by other evidence. The *Crouch* court clearly explained this: "We point out that the fact that a document is deemed admissible under the statute does not preclude the contents of the document from being challenged during the hearing. Rather, the admission of such a

4

document into evidence merely creates a rebuttable presumption as to its accuracy.

While I agree that a DUI Information Sheet may be challenged by other evidence, Respondent's counsel did not directly challenge the information contained in the DUI Information Sheet. Respondent's counsel did not ask Deputy Frick to explain why he checked the box on the DUI Information Sheet that stated that the written warning was "READ AND PROVIDED" to Respondent. Similarly, Respondent's counsel did not challenge or attempt to rebut Deputy Frick's testimony that Respondent refused to sign the written warning. Because Respondent's counsel did not explore either of these issues, Respondent did not rebut the presumption that the information in the DUI Information Sheet was accurate.

In closing, I again note that license revocation laws are intended to protect the public. Respondent clearly drove his truck while he was intoxicated and refused to submit to the secondary chemical test. Because the only direct evidence in the record confirms that a written warning was "provided" to Respondent before his refusal—and that he refused to sign it—the DMV's order revoking Respondent's driver's license for refusing to submit to the secondary chemical test should have been affirmed.

Based on the foregoing, I respectfully dissent.