**FILED**

**June 8, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

Everett J. Frazier, Commissioner,
West Virginia Division of Motor Vehicles,
Petitioner

vs.)  No. 20-0896 (Kanawha County 20-AA-25)

Courtney Rhodenizer,
Respondent.

## MEMORANDUM DECISION

Petitioner Everett J. Frazier, Commissioner, West Virginia Division of Motor Vehicles ("DMV"), appeals the October 16, 2020, order of the Circuit Court of Kanawha County granting Respondent Courtney Rhodenizer's petition for judicial review and reversing the final order of the Office of Administrative Hearings ("OAH"). The OAH's final order had affirmed an earlier order of the DMV revoking respondent's driver's license for driving while under the influence of controlled substances or drugs.[1] The primary issue in this appeal is whether respondent sufficiently proved that she will suffer actual and substantial prejudice as a result of the delay of more than five years and six months between the administrative hearing and entry of the OAH's final order if the revocation were upheld.

This Court has considered the briefs, the record on appeal, and pertinent legal authority, as well as the oral arguments presented to this Court by the parties. Upon consideration of the same, we find no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

### Facts and Procedural History

Because the facts giving rise to the revocation of respondent's driving privileges are not at issue in this appeal, we need only briefly recount them. On April 18, 2013, Deputy W.K. Nester of the Greenbrier County Sheriff's Department initiated a traffic stop of respondent's vehicle after responding to a Be on the Look Out ("BOLO") call for a possibly impaired driver who was seen

---

[1] The DMV is represented by Patrick Morrisey, Esq., Attorney General, and Janet E. James, Esq., and Elaine L. Skorich, Esq., Assistant Attorneys General. Respondent appears by David Pence, Esq.

1

running off the road in Lewisburg.[2] Deputy Nester located respondent's vehicle and observed it as it swerved, weaved, drove the tires on the center line marker, and traveled left of center. Deputy Nester spoke with respondent and observed her speech to be slurred and her eyes to be dilated; although she was unsteady while exiting her vehicle, she appeared normal while walking and standing. Respondent failed two of the three standardized field sobriety tests administered to her. The preliminary breath test showed a blood alcohol concentration of 0.00%. Respondent was lawfully arrested for driving while under the influence of controlled substances and/or drugs. No criminal charges in connection with respondent's DUI arrest were filed.

On June 6, 2013, the DMV entered an order revoking respondent's driving privileges for a period of ninety days and ordering that respondent successfully complete the West Virginia Safety and Treatment Program. Respondent timely requested an administrative hearing before the OAH, which was conducted on June 27, 2014. Respondent appeared pro se and testified on her own behalf. Deputy Nester also testified.

On January 23, 2020, five years, six months, and twenty-eight days after the administrative hearing, the OAH affirmed the order of revocation by its Decision of Hearing Examiner and Final Order of Chief Hearing Examiner.

On February 20, 2020, respondent filed a Petition for Judicial Review of the OAH's final order on the grounds that (1) the DMV failed to prove that respondent was driving while under the influence of controlled substances or drugs at the time of her arrest, and (2) respondent's constitutional due process rights were violated by the failure of the OAH to timely render a final order. Respondent requested an evidentiary hearing. She also filed a motion to stay the order of revocation pending the outcome of the petition for judicial review. Although a hearing on the motion to stay was scheduled, it was later canceled.[3]

Pursuant to the briefing schedule that was entered by the circuit court, on June 16, 2020, respondent filed her opening brief in which she argued that the DMV failed to satisfy its burden of proving that respondent was DUI and, further, that she suffered actual and substantial prejudice by the almost six-year delay in the issuance of the final order affirming revocation. On July 16, 2020, the DMV filed a response in which it argued that DUI was sufficiently proven and that

---

[2] According to respondent, the source of the BOLO call was her psychiatrist's office, which was located at a local mental health facility approximately one mile from where her vehicle was stopped. Prior to the stop, respondent testified that she had abruptly left the office after a false positive drug screen and altercation with office personnel caused her to become upset. Respondent testified that she was crying and possibly looking at her phone while driving, which could explain why she swerved and crossed the center line. According to respondent, she was returned to her doctor's office, which "had a temporary detainment order on me to make sure that I was in mentally health good standing [sic] because of the whole ordeal . . . to make sure that I was not a harm to myself or others." Respondent admitted to taking her prescription medication prior to the stop.

[3] By the time the evidentiary hearing was held in circuit court in September of 2020, *see infra.*, the 90-day revocation period had expired. Respondent was still required to successfully complete the safety and treatment program.

because respondent failed to request a separate evidentiary hearing on the issue of whether she suffered actual and substantial prejudice from the delay, there was no evidence presented in support of that claim.[4]

On July 27, 2020, respondent filed a motion for evidentiary hearing "for the purpose of presenting [respondent's] testimony as evidence of irreparable harm and substantial prejudice on the matter of delay" and, thereafter, also filed a reply to the DMV's response brief as well as an affidavit outlining the substantial prejudice she will suffer as a result of the almost six-year delay in the issuance of the final order upholding revocation. The DMV filed an objection to the motion for evidentiary hearing on the ground that respondent failed to file a notice of hearing when she made the initial request for a hearing in her opening brief. The DMV argued that it is not appropriate to hold an evidentiary hearing after the parties have submitted their briefs. On July 30, 2020, the DMV filed a motion to strike respondent's reply brief and/or respondent's affidavit that was submitted therewith.

Without ruling on the DMV's motion to strike or objection to respondent's motion for evidentiary hearing, the circuit court scheduled an evidentiary hearing (hereinafter "*Staffileno* hearing")[5] on respondent's claim that she suffered substantial prejudice as the result of the delay. At the September 1, 2020, hearing, respondent presented evidence that she was told at the June of 2014 administrative hearing that she could expect a final order within three to six months. Respondent further testified that, at the time of the 2014 hearing, she was residing in Blacksburg, Virginia, and working at a restaurant called The Cellar as a waitress and bartender. She lived next to a bus stop and testified that having a valid driver's license was not then a necessity. Respondent married and had a child in 2015. In late 2017 or early 2018, respondent was offered a position as manager at The Cellar. She testified that when she accepted that position, she did not expect that her driving privileges would be revoked given that, by that time, more than three years had passed since the administrative hearing. In the meantime, respondent had moved with her family to the town of Christiansburg, Virginia, which is located approximately twenty minutes, by car, to her job at The Cellar. According to respondent, she moved her family to Christiansburg because housing was more affordable, "[i]t was away from the college students[,]" and "[i]t was a better neighborhood for my family, for my child." Respondent testified that she needed a valid driver's license to get to and from her job in Blacksburg; that public transportation, ride sharing, and taxis were not viable options in that regard; and that part of her duties as manager at The Cellar required that she drive her vehicle to pick up liquor orders and other items as needed for the restaurant during the course of her shift. Respondent is the sole provider for her family. Respondent testified that she entered into a lease agreement on a home in Christiansburg beginning in 2018, and in 2019, entered into a lease agreement for a vehicle when the one she was previously driving broke down. Respondent testified that she would have stayed in Blacksburg near a bus route had she known her license could still be revoked after so much time had passed and that she would not

---

[4] *See* Syl. Pt. 2, *Reed v. Staffileno*, 239 W. Va. 538, 803 S.E.2d 508 (2017) (holding that when a driver contends his or her constitutional due process rights were violated by a delay in the issuance of an OAH order upholding revocation, the driver "must demonstrate that he or she has suffered actual and substantial prejudice as a result of the delay[,]" which, if proven, is then balanced against the reasons for the delay).

[5] *See* n.4, *supra.*

3

have entered into a lease agreement for either the home in Christiansburg or the car. She stated that, without a valid driver's license, she would lose her job,[6] her car, and possibly her home.

Respondent also testified that she had a valid Virginia's driver's license that was due to be renewed in December 2020 and that the revocation of her West Virginia license would prevent her from renewing it because she had a DUI in Virginia within the previous ten years. Respondent's counsel advised the circuit court that the administrative charge in West Virginia of first offense DUI was, in effect, a clerical error that counsel believes will "easily be picked up and then she's enhanced to a second offense which in my experience is what happens. . . . If they discover the . . . first offense DUI in Virginia, it would trigger the enhancement because it's two DUIs within a ten-year period. The fact that the [DMV] when it issued the Order of Revocation earlier was unaware of the Virginia DUI or somebody didn't check, it will still come up in the system." During oral argument, the DMV represented to this Court that respondent renewed her Virginia driver's license on October 28, 2020, which was *after* entry of the circuit court's October 16, 2020, order reversing the revocation order in West Virginia. Therefore, there was no DUI on respondent's driving record in West Virginia at the time she renewed her Virginia license.

In lieu of live testimony from OAH Director and Chief Hearing Examiner Teresa D. Maynard, the parties stipulated to the admission of her testimony via sworn affidavit. Without offering specific reasons for the delay in issuing a final decision in respondent's case, Director Maynard explained, more generally, that, over a course of years, there were considerable delays in issuing OAH[7] final decisions. She attributed the delays to a significant backlog of unheard cases during that time, which was caused by a large number of administrative hearing requests, the liberal granting of continuances of such hearings,[8] the unworkable expectation that final orders in heard cases be drafted "from scratch" and "in chronological order by date of the administrative hearing" regardless of complexity, staffing issues, and uneven workloads among the hearing examiners, among other factors.

By order entered on October 16, 2020, the circuit court granted respondent's appeal and reversed the final order of the OAH upholding her revocation. The circuit court concluded that respondent had

---

[6] After the OAH's final order upholding revocation was entered in January 2020, respondent took a manager's job at another restaurant in the town of Eggleston. However, she continued to work at The Cellar in Blacksburg where she helps the new manager train employees, picks up serving shifts to supplement her income, and fills in when the manager needs a day off. Further, although respondent extended the lease on her home in Christiansburg after the final order was entered, it is undisputed that she moved into the home prior thereto.

[7] The OAH was terminated on July 1, 2021. *See* W. Va. Code 17C-5C-1a (2020).

[8] Respondent's administrative hearing was originally scheduled for October 8, 2013. According to Director Maynard's affidavit, respondent's administrative hearing was rescheduled twice due to separate requests for continuances filed by both the DMV and respondent. As noted above, respondent's administrative hearing was ultimately conducted on June 27, 2014.

established that she suffered actual and substantial prejudice due to the delay in receiving a Final Order. Specifically, [respondent] accepted a promotion, purchased a new vehicle and moved her family, all of which were decisions she made in reliance on the case's seeming resolution. Had this matter been timely resolved after the June 2014 administrative license revocation hearing, [respondent] would have been well past the fallout of a revocation, and not be subject to such the actual and substantial prejudice that such a delay imposes on an individual, their family, and their livelihood. [Respondent] made family and livelihood decisions over three (3) years ago in reliance on OAH having timely fulfilled its statutory obligation to issue an order resolving this matter.

[The DMV] has failed to produce any meaningful justification for the delay. [Respondent's] file was not lost or destroyed. [Respondent's] case did not include any novel or complex evidentiary issues. Moreover, [respondent] did not take action to contribute to the almost six-year delay, and in this case, the prejudice suffered as a result of the post-hearing delay outweighs any reasons offered by [the DMV] for the delay.

It is from this order that the DMV now appeals.

**Standard of Review**

Our review of the DMV's appeal is governed by the following standard:

[o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va.Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996). Furthermore, where, as here, the circuit court reversed the final decision of the OAH, our review is likewise deferential to the circuit court in its ultimate disposition: "In cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." *Id.* at Syl. Pt. 2.

**Discussion**

In its first assignment of error, the DMV argues that the circuit court erred in concluding that respondent was actually and substantially prejudiced by the almost six-year delay in the OAH's issuance of a decision to uphold the revocation of her driving privileges. The DMV contends that the circuit court improperly relied on decisions respondent made *after* the OAH's final order was entered, including that respondent "voluntarily accepted a second job" at another

restaurant, left her management job at the first restaurant, and extended the lease on her home. According to the DMV, these decisions cannot constitute detrimental changes in circumstances related to the delay because they did not occur during the almost six-year period between the administrative hearing and entry of the final order.[9] Respondent counters that she presented

[9] The DMV also states that respondent's "failure to seek mandamus relief and raising the delay issue for the first time on appeal to the circuit court warranted a finding that she did not suffer actual and substantial prejudice as a result of the delay[,]" and that the circuit court "ignored the Respondent's failure to move her appeal along at the OAH."

To the extent the DMV contends that respondent waived her right to a *Staffileno* hearing by failing to request mandamus relief with the circuit court, our caselaw does not support such an argument. Rather, we have previously cautioned that

> "although [the driver] could have sought to hasten the Commissioner's decision by filing a petition for writ of mandamus in the circuit court, [the driver] did not waive the argument that he was prejudiced by the delay in his circuit court appeal of the revocation order. Despite the availability of extraordinary relief as a means of seeking the issuance of delayed decisions, a party whose driver's license has been revoked should not have to resort to such relief to obtain a final decision by the Commissioner within a reasonable period of time following the administrative hearing. By the same token, when a party avers that his due process rights have been violated by a delay in the Commissioner's decision—that is, that he has suffered actual and substantial prejudice from the delay—but elects not to seek mandamus relief, the reviewing court *may* consider this fact in determining whether any such prejudice has occurred. . . .
>
> "To be clear, a party who elects not to seek mandamus relief but who, instead, raises the delay issue for the first time on appeal to the circuit court, does so at his peril. The reviewing court *is free to consider* the aggrieved party's failure to pursue a ruling as a factor in determining whether he has suffered actual and substantial prejudice as a result of the delay."

*Staffileno*, 239 W. Va. at 545, 803 S.E.2d at 515 (2017) (quoting *Miller v. Moredock*, 229 W. Va. 66, 72 n.7, 726 S.E.2d 34, 40 n.7 (2011)) (emphasis added). We have made clear that "a circuit court has discretion to consider the impact of a party's failure to seek a writ of mandamus to compel issuance of a revocation order after a hearing. Such discretion means that a court *may give substantial or no weight to such evidence.*" *Staffileno*, 239 W. Va. at 545, 803 S.E.2d at 515 (emphasis added). *See also Frazier v. Derechin*, 246 W. Va. 36, 42, 866 S.E.2d 101, 108 (2021) ("failure to seek extraordinary relief is not a waiver of any complaint to delay, but the circuit court has the discretion to consider it in examining whether there has

6

sufficient evidence that, based upon decisions she made *during* the almost six-year delay in the issuance of the OAH's final order, she will suffer actual and substantial prejudice if the revocation is upheld. Respondent argues that the circuit court properly balanced such prejudice against the reasons for the delay given by the OAH as required by *Staffileno*, and that the order of revocation was correctly reversed. We agree with respondent.

We have instructed that

> [o]n appeal to the circuit court from an order of the Office of Administrative Hearings affirming the revocation of a party's license to operate a motor vehicle in this State, when the party asserts that his or her constitutional right to due process has been violated by a delay in the issuance of the order by the Office of Administrative Hearings, the party must demonstrate that he or she has suffered actual and substantial prejudice as a result of the delay. Once actual and substantial prejudice from the delay has been proven, the circuit court must then balance the resulting prejudice against the reasons for the delay.

Syl. Pt. 2, *Reed v. Staffileno*, 239 W. Va. 538, 803 S.E.2d 508 (2017).

In respondent's case, the circuit court found actual and substantial prejudice based upon evidence that respondent "accepted a promotion, purchased a new vehicle, and moved her family, all of which were decisions she made in reliance on the case's seeming resolution" that her driving privileges would remain intact. Based upon our review of the evidence presented at the *Staffileno* hearing, we find no error in the circuit court's conclusion. Respondent testified that she was told at the revocation hearing in June of 2014 that she could expect a decision in three to six months; however, a decision was not imminently rendered. During the years following the hearing, but before a final order was entered in January 2020, respondent married and had a child (2015) and moved her family from a home in Blacksburg that was located near a bus stop to a more desirable and affordable home in Christiansburg that was twenty minutes driving distance from her job (2018). She also accepted a management position at the restaurant where she worked, which required that she have a valid driver's license (2017 into 2018). Additionally, in 2019, respondent entered into a lease agreement for a vehicle when the one she was previously driving broke down. Respondent testified that she would have stayed in Blacksburg near a bus route had she known her driver's license could still be revoked after so much time had passed and that, as the sole provider for her family, she would not have entered into a lease agreement for either the home in Christiansburg or the car.

---

been actual and substantial prejudice"). By no means, therefore, was respondent required to seek mandamus relief with the circuit court to compel issuance of a final order. In its discretion, the circuit court was free to consider the respondent's failure to pursue such a ruling and, in its wide discretion, weighed that evidence accordingly.

7

Moreover, the actual prejudice that respondent would suffer in Virginia as a result of her West Virginia driver's license being revoked was addressed during the *Staffileno* hearing. Respondent offered unrefuted testimony that the revocation of her license in West Virginia would result in her not being able to drive in Virginia. Virginia and West Virginia are members of the Driver License Compact. This Court has noted that each state in the Driver License Compact is required to treat a conviction in a sister state in the same manner as it would an in-state conviction:

> West Virginia is a member of the Driver License Compact, W.Va.Code §§ 17B-1A-1 to 2. "Under the Driver License Compact, each state is required to treat a conviction in a sister state in the same manner as it would an in-state conviction." 7A Am.Jur.2d Automobiles and Highway Traffic § 154 (1997). This premise was stressed in *Shell* [*v. Bechtold*, 175 W.Va. 792, 338 S.E.2d 393 (1985)] wherein the Court stated, "As a member of the interstate Driver License Compact and by virtue of Article IV, Code, 17B-1A-1, the DMV is required to treat out-of-state convictions in the same manner as it would in-state convictions." *Shell*, 175 W.Va. at 795, 338 S.E.2d at 395-96. We must, therefore, treat the Ohio convictions as if they were in-state convictions.

*State v. Euman*, 210 W. Va. 519, 522, 558 S.E.2d 319, 322 (2001).

Likewise, it would appear from this holding that that Virginia would likely treat a revocation in West Virginia in the same manner as it would an in-state conviction pursuant to the Driver License Compact. If so, respondent would suffer prejudice if her license revocation was upheld. Given the foregoing, we do not find that the circuit court clearly erred in finding that respondent would suffer actual and substantial prejudice as a result of the delay if her license revocation was upheld.

The circuit court then balanced the actual and substantial prejudice suffered by respondent as a result of the delay against the stated reasons for the delay, as required by *Staffileno*. The circuit court found there to be "no meaningful justification for the delay" as respondent's "file was not lost or destroyed" nor did her case present "any novel or complex evidentiary issues." According to Director Maynard's sworn affidavit, the reasons for the delay stemmed from various factors, including, but not limited to, the OAH's inability to keep up with hearing requests and the liberal granting of continuances over a period of years that, in turn, adversely affected the hearing examiners' ability to timely render decisions in cases in which hearings had been conducted. These reasons, as well as the others outlined by Director Maynard in her affidavit, were clearly systemic, having nothing at all to do with respondent's particular case. In balancing the OAH's explanation as to why it was generally unable to timely and efficiently render final decisions against the evidence that the actual and substantial prejudice respondent will suffer if her license revocation were upheld, we conclude that the circuit court did not err in its decision reversing the revocation.[10]

---

[10] To the extent the DMV contends that respondent's decisions to move her family and accept new employment did not actually and substantially prejudice her, we are mindful that, in

In its second assignment of error, the DMV argues that the circuit court erred in affording respondent a *Staffileno* hearing after the briefs on the issue of delay were already filed. The DMV argues that although respondent requested a hearing in her petition for judicial review, "she did not file a notice of hearing." Thus, the DMV argues, respondent's right to a *Staffileno* hearing was waived. Respondent counters that, to the extent the DMV contends it was prejudiced by the holding of a *Staffileno* hearing after the initial briefs were filed, any such prejudice was cured by the DMV's submission of supplemental briefing specifically addressing the evidence presented at the hearing. Respondent argues that the circuit court properly afforded her a right to be heard on the issue of whether she would suffer actual and substantial prejudice from the OAH's almost six-year delay in issuing its final order upholding revocation of her driver's license. We agree with the respondent and find no error.

It is well established that "'[a] driver's license is a property interest and such interest is entitled to protection under the Due Process Clause of the West Virginia Constitution.' Syl. Pt. 1, *Abshire v. Cline*, 193 W. Va. 180, 455 S.E.2d 549 (1995)." Syl. Pt. 2, *Straub v. Reed*, 239 W. Va. 844, 806 S.E.2d 768 (2017). Given that almost six years had passed between the administrative hearing and the issuance of the OAH's final order upholding revocation of respondent's driver's license, respondent was entitled to present evidence that, as a result of the egregious delay, she will suffer actual and substantial prejudice if her license revocation is allowed to stand. We fail to see how affording respondent the opportunity to be heard in this regard harmed the DMV in any way. The DMV thoroughly cross-examined respondent at the hearing and, thereafter, submitted supplemental briefing to address the specific evidence presented at that hearing. We have explained that "[u]nder the abuse of discretion standard, we will not disturb a circuit court's decision unless the circuit court makes a clear error of judgment or exceeds the bounds of permissible choices in the circumstances." *Hensley v. W. Va. Dep't of Health and*

---

our role as an appellate reviewer, we may not reverse a circuit court's findings of fact simply because we might have weighed the evidence differently. It is beyond cavil that "a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the [lower tribunal's] account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, in part, *In Re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). Indeed, it is well understood that a factfinder's "findings are based on its assessment of the credibility of witnesses and if adequately explained and supported by the record, the findings will not be overturned unless they are hopelessly incredible or they flatly contradict either the law of nature or undisputed documentary evidence." *Jarrell v. City of Nitro*, 244 W. Va. 666, 673, 856 S.E.2d 625, 632 (2021) (quoting *In re Queen*, 196 W. Va. 442, 447, 473 S.E.2d 483, 488 (1996)). *See W. Va. State Police v. Walker*, 246 W. Va. 77, __, 866 S.E.2d 146, 151 (2021) ("'There are many critical aspects of an evidentiary hearing which cannot be reduced to writing and placed in a record, e.g., the demeanor of witnesses. These factors may affect the mind of a trier of fact in forming an opinion as to the weight of the evidence and the character and credibility of the witnesses.'" (quoting *Stephen L.H. v. Sherry L.H.*, 195 W. Va. 384, 395, 465 S.E.2d 841, 852 (1995) (superseded by statute on other grounds)). Because the circuit court was in the best position to observe and consider the testimony and demeanor of respondent at the *Staffelino* hearing, we are compelled to defer to its findings, which we believe are fully supported by the record.

9

*Human Res.,* 203 W. Va. 456, 461, 508 S.E.2d 616, 621 (1998) (*quoting Gribben v. Kirk,* 195 W. Va. 488, 500, 466 S.E.2d 147, 159 (1995)). The DMV has failed to establish that, by holding a *Staffileno* hearing in this case, the circuit court committed a clear error of judgment or otherwise exceeded the bounds of permissible choices under the circumstances.

## Conclusion

For the foregoing reasons, we affirm the circuit court's order.

Affirmed.

**ISSUED:** June 8, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Judge Richard A. Facemire, sitting by temporary assignment

Justice William R. Wooton, deeming himself disqualified, did not participate.